[Putnam J.
Suppose a testator to be blind and to say merely
that he revokes a former will, and the scrivener puts into the instrument devises, could not the heir go into the probate office and prove it in part and disprove the rest?] That would be a novel case, but might not the heir, without going into the probate office, show the paper as a revocation and prove the clauses of devise to have been fraudulently inserted ? It would strike every one as a strange proceeding to offer a revocation for probate. The case of Goodright v. Glazier, 4 Burr. 2512, which determines that a cancelling of a second will revives the first, is cited in Phillimore, and the decision is there doubted. By the civil law the first does not revive, unless there is something to show a republication. It is difficult to decide which rule is best, for either will cause hardships in particular cases ; but this Cdurt, sitting as a court of probate, will be governed by the rule of the civil law.
The former decree, to be binding, should be between the same parties and oe precisely the same point; which was not *548 the case here in either respect. The case of Reid et ux. v Borland was determined without much investigation, and the second will there was defectively executed.
The opinion of the Court was afterwards delivered at the October term, in Essex, by
Parker C. J.
[After stating the facts, he proceeded :J The appellant in the present case contends, that notwithstand ing the decree disallowing the instrument of 1821 as a will, that instrument is good and valid for the purpose of revoking the former will, there being a clause of revocation therein, and that she as heir at law of Sarah Badger is not bound by that decree, but is entitled now to offer and prove to this Court the due execution and publication of said will, so far as respects the revoking clause therein, and thereby to avoid the instrument now offered for probate. Upon this question, the cause has been elaborately and learnedly argued, and after as much deliberation thereon as the pressing calls of this circuit would allow, we have come to a decision which we take the earliest opportunity to announce, as the circumstances of the estate probably require that the contested claims and rights should be ascertained as soon as possible.
When the question was first proposed, it struck us all as novel and singular, that an instrument once offered to be proved as a will, and disallowed as such by the court of final jurisdictian upon the subject, should be imagined to be capable of being used afterwards for any purpose whatever ; the effect of such a decree seeming to be, to render the instrument entirely null and void ; bin the arguments we have heard, and the authorities cited, have satisfied us that the case was not so clear as we at first believed it, though upon a thorough examination of the arguments and authorities we are convinced our first impression was well founded. The case of Reid et ux. v. Borland, 14 Mass. Rep. 208, is a direct decision upon the question, and would justify us in going no further into the subject, if the circumstances under which that decision was made had admitted of a full investigation ; but as the decision took place in the hurry of a circuit, and in a place where many authorities could not be obtained, we have thought fit to consider the question as open, and to reexamine it on principle, as well as au *549 ehority, after the aid we have had from the argument in the present case. In the case abox i cited, a will made subsequently to that xvhich was offered for probate, in which was a clause revoking all former wills, was tendered as a revocation of the first will; but it having been offered for probate, and rejected because not attested according to the statute, though otherwise it was perfect as a will, it was held that it could not operate as a revocation. This case embraces all the points which are raised in the case before us, and, among others, the conclusiveness of the decree upon the heirs ; but for the reasons above mentioned, we have considered it as leaving open the subject for investigation.
It seems to be agreed in the argument, that the instrument relied upon as a revocation in this case must be such as is described in St. 1783, c. 24; in the 2d section of xvhich it is enacted, that “no devise in writing of lands, tenements and hereditaments, or any clause thereof, shall be revocable other-ways than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself, or in his presence, and by his direction and consent ; but all devises and bequests of lands and tenements shall remain and continue in full force until the same be burnt, cancelled, torn or obliterated by the testator, or his direction, in manner aforesaid, or unless the same be altered by some other will or codicil, or other writing of the devisor, signed in the presence of three or more witnesses, declaring such alteration.”
The 6th section enacts, “ that no will in writing, concerning any goods chattels or personal estate, shall be repealed, nor shall any clause or bequest therein be altered or changed by any xvords or will, by word of mouth only, except the same be in the lifetime of the testator committed to writing and.read to the testator, and allowed by him in the presence of three credible witnesses at the least.”
An instrument, then, to have the effect of a revocation of a will which devises real estate before made, must be in itself either a will or codicil ; or some other writing of the devisor, signed in the presence of three or more witnesses. If the instrument propounded as a revocation be in form a will, it must *550 be perfect as such, and be subscribed and attested as is required by the statute. An instrument intended to be a will, but failing of its effect as such on account of some imperfection in its structure or for want of due execution, cannot be set up for the purpose of revoking a former will, for this substantial rea son, that it cannot be known that the testator intended to revoke his will except for the purpose of substituting the other, and that it would be making the testator die without a will, though it was clearly his design not to do so. This principle has been settled by many decisions in the English courts of law and equity, their statute of frauds in relation to this subject being similar to ours.
In the case of Eccleston v. Speke, reported in Carthew, 79, and in several other books of reports, the Lady Speke had by her will in writing devised lands to the defendant, and after-wards made another will, by which she also devised the lands to the defendant. This latter will was signed by her in presence of three witnesses, but they did not attest it in her presence. It was held that it did not amount to a revocation of her former will; because, being intended for a will and failing as such, to give it operation as a revocation would be contrary to the intent of the statute. And it is there stated by the court, “ that if the revocation is by will, it must be such a will so qualified as is provided by the section of the statute in relation to wills, to wit, signed and subscribed by the witnesses in presence of the testator. The testatrix never intended this writing to be a revocation, but by making it her last will; which it is not, because it is void.”
In the case of Limbery v. Mason & Hyde, Comyns, 451, it was held, that if there be an intention to revoke by a new will, and the instrument made for that purpose cannot take effect as a will, on account of some defect in the execution, it cannot be a revocation, because it was not' intended to revoke the old wil until the new one should be complete. “ Tunc prius testamentum rumpitur, cum poslerius rite perfectum est.” In Hyde v. Hyde, 3 Chan. Rep. 155, there is a similar decision.
The case of Onions v. Tyrer, reported in 2 Vern. 742, is still stronger. Tyrer, in 1707, made a will, duly attested, ii which he disposed of, his real estate. In 1711 he made another touching his real estate, with a clause of revocation of *551 former wills ; but this was not attested in his presence. It was resolved, that although there was an express clause in the latter will revoking the former, yet that, being void for the above rouse, it would not amount to a revocation, it being intended to operate as a will, and not otherwise as an instrument of revocation. And the case of Eccleston v. Speke is cited in support of this decision. This case is the stronger, because there was a cancelling of the former will, but as that was for the purpose of setting up the second, which could not be done, the former will was revived in equity on the ground of accident.
The above cases have been supposed by the counsel in this case, as well as by counsel in subsequent cases in England, to have been determined on the fact, that the devises in the second will were substantially the same as in the first; but the position is laid down broadly as a principle, and Lord Cowper is reported to have said, in the case of Onions v. Tyrer, that it would have made no difference if the devise in the second will had been to a third person ; and in a much later case, reported in 7 Ves. jun. 348, the principle is adopted by the Lord Chancellor Eldon, and by Lord Alvanley and the master of the rolls, Sir William Grant, whom he had called to his assistance, without any restriction. They all concurred in the opinion, that an appointment of a guardian, duly made according to the statute, was not revoked by an instrument made for the purpose of appointing another guardian, but not executed according to the statute, although it was demonstrable that a revocation was intended ; but it was intended in order that another guardian should be substituted. I should think this case was not accurately reported, so far as respects the reasoning of the judges, as that in some parts, particularly in Lord Jllvanley's opinion, is inconsistent with the decision. Sir William Grant gives the true ground of the decision. He says, (p. 377,) “ There can be no doubt that part of the intention was to revoke the appointment. But the question is, whether that was the substantive, direct object, or only as an incidental and necessary part of the ultimate object; and whether it would ever have been entertained except with reference to that.” He says further, “ Where there is nothing but the mere fact of a new devise, the intentioi to revoke can be considered only *552 with reference to the new devise, and as the testator means to S've effect to it, if the instrument is so made as to be incapable of operating, I cannot conceive how an instrument, inoperative to its direct purpose, can give effect to an intention of which I know nothing but by that purpose.” We think it clearly settled by the cases which have been commented upon, that an instrument intended for a will, but inoperative as such on account of some defect in the instrument or in its execution, although it contain an express clause of revocation of former wills, cannot be used for the purpose of revoking only.
The cases cited against this position do not in reality militate with it. The principle they establish is, that a second will, inconsistent with the first, perfect in its form and execution, but incapable of operating as a will on account of some circumstance dehors the instrument, may nevertheless be set up as a revocation of the first.
The cases in 1 Roll. Abr. 615, under the head of what may be a revocation, are of this sort. A will perfect in its nature is made and properly executed, but is incapable of operating on account of some incapacity in the devisee to take ; this nevertheless operates as a revocation of a former will, because all the requisitions of the statute are complied with, and it is inoperative only on account of some extrinsic circumstance. In these cases, however, it must be proved, not only that another will has been made, different from the former, but in what it differs, so that the court may know it is inconsistent; as in the case of Goodright v. Harwood, reported in 3 Wils. 497, and Cowp. 87. The cases of Roper v. Radcliffe, in 10 Mod. 233, and Beard v. Beard, 3 Atk. 72, are of similar import, there being no defect in the instruments, but an incapacity in the party for whose benefit they are made to take under them.
It must be confessed that it is not easy to perceive any reason for the distinction formed by these two classes of cases, as far as they relate to the intention of the testator, for in the latter, as well as former, he manifests an intent not to die intestate. Perhaps the true ground ' is, that in the former cases to allow a defective will to be set up as a revocation would contravene the statute, and in the latter it would not. But it s said, that the will set up as a revocation comes within the *553 latter class of cases, it being duly executed and attested according to the statute, and being inoperative only from circumstances proved dehors the will. It is true the instrument is perfect in all its parts, and is accompanied with all the formalities prescribed by the statute ; but it comes before us connected with a decree declaring that it is null and void in itself, so that it never had any legal force or being as a will; how, then, can it be treated as such for the important purpose of revoking a former will ? If the principle deduced from the cases cited is true, that all we can see of a design to revoke is indicative of a purpose to substitute this for the one revoked, then, to give effect to the revocation, and to deny any effect to the dispositions of the will, would be to thwart the intentions of the testatrix. How can we know from the will itsélf, that she would not have preferred that the first will should stand, rather than that the heirs at law should enjoy the estate? It is obvious she meant no good to them in either of the wills. Besides, we are to look at the grounds of the decree setting this second will aside. They were fraudulent representations, undue influence, practice upon a weak and infirm mind. These were the causes which produced the second will, and to give effect to the second the first was revoked. These means were, then, as much applied to the revoking as to the disposing parts of the will. It would be impossible to separate them, without proof that she was a free disposing agent in one part of the will, and a mere dupe of interested persons in the other parts. While that decree stands, the whole will must be deemed to be a nullity in regard to all persons who are bound by it. If a person of sound mind had made a will, and afterwards, when of unsound, had been prevailed upon to make another, revoking the former, it could not be pretended that the latter should be set up as a revocation. There is certainly no difference in principle between such a case and the one at bar ; for a will obtained by undue "nfluence and practice is as much a nullity as one obtain ed from a person of insane memory.
And this brings us to the question, whether the heirs at law of the testatrix are to be considered parties or privies, so as to be concluded by the proceedings of the Supreme Court of Probate upon that will.
*554 All persons interested in an estate of a person dying testatt or intestate are bound by the proceedings in the probate office, as far as the judge has jurisdiction of the subject, if they had notice of the case which was to be acted on. It is admitted that general notice in the customary form was given of the intent to prove the will which has been decided upon. Heirs at law are the persons most interested in such questions; they are bound by the public notice, and no instance exists of their being allowed to object to the execution or the validity of a will which has been regularly proved in the due course of probate proceedings, they having had such notice. If the will which has been disallowed had been set up and allowed, no one can deny that the heirs at law would have been bound, and yet they would have been disinherited. This is not denied, but it is said, that, as they had no interest in setting up the will which has been disallowed, but on the contrary that their interest consisted in having it avoided, and that it was the revoking part only that they were interested to establish, that they would not have been permitted to insist upon that part of the will being proved, and the residue rejected, and therefore they ought now to avail themselves of it for that purpose. Admitting this to be true, it does not follow that they have the right to set up the will in part now, which has been rejected in toto, in order to give effect to the revoking clause only ; for it remains unprov ed and disallowed, and before it can be allowed any force must be subjected to-an original examination in the probate court, for it cannot be originally proved here ; and .that will is not now before us as a subject of proof. If, therefore, the appellant is not bound by the decree on account of the circumstances mentioned, it will follow that she must go before the probate court and prove the will there so far as respects the revocation ; and there is no doubt that a will may be proved in part and disproved in part, as in the case of Billinghurst v. Vickers, 1 Phillimore, 187, where part of a will was established and part rejected, and in 3 Atk. 72, where the will was held good as to the appointment of an executor, though the legacies were revoked. There will be, however, this difficulty to meet with there, that if the revocating clause could now be set i p alone as the will of the testatrix, so it might when the case was undei. *555 the consideration of the court before, or upon the appeal, and then, if, as heir, she was bound by the decree, having had legal notice, and being entitled to be heard, the decree will be a bar to the new proceeding ; and, indeed, there seems to be no reason why the heir should not have appeared and prayed for establishing the will as a revoking will, while others were opposing it as to all the dispositions made in it. The attempt, however, would probably have failed ; for the same evidence which showed the will was unduly obtained would have affected the revoking as well as'the disposing part of the will ; especially as all the misrepresentations which were supposed to influence the mind of the testatrix were directed against' him in whose favor the will to be revoked was made.
Many cases have been cited from the English books to show that a paper purporting to be a will, but not proved as such before the ordinary, or the contents of such paper which has been lost, may be set up against a will duly executed and published, in order to revoke the will ; but devises of land in England are subjects of proof in the courts of common law there in the ordinary course of trial; whereas here, by virtue of our statutes, the exclusive jurisdiction of wills, whether of land or personal estate, is given to the court of probate ; and the decree of that court allowing or disallowing such will can never be inquired into by any other forum. It is true, the same tribunal holds appellate jurisdiction of these subjects, but it is to proceed in the same manner in relation to them as if the tribunal was different and composed entirely of different persons. In thp case of Osgood v. Breed, 12 Mass. Rep. 525, and The Inhabitants of Dublin v. Chadbourn, 16 Mass. Rep. 433, this doctrine is clearly laid down ; and the experience of all of us on the bench and at the bar will justify the assertion, that no instance has occurred in our common law courts of a will being attempted to be proved otherwise than by a decree of the probate court; or, if appearing to be so proved, of any attempt to defeat it by evidence to the jury. It follows that the cases cited from the English books, tending to show that questions of revocation have been decided there in the ordinary course of trial, are not applicable here.
Whether a writing, other than a will, made pursuant to the *556 statute for the purpose of revocation, might be produced in evidence to defeat the operation of a will in an action brought at common law to enforce it, has never been determined ; but considering that the subject in relation to wills is with us peculiarly of probate jurisdiction, there is reason to suppose that such paper ought to be proved in that forum, as well as a will or a codicil. But be this as it may, the revocation insisted on in this case is no otherwise a revocation than as it is a will, and as such, for the reasons before given, it can have no legal effect unless proved as such. The will exhibited for this purpose, so far from being proved, is disproved. It is before us as a nugatory and void instrument, and therefore there is no possibility of our giving any force or effect to any part of it.