Isaac P. Stevens, Lafayette Stevens and Frederick J. Henika, executor v. Amelia A. Hope et al.

*Wills—Probate proceedings—Evidence of motive—Revocation.*

1. A probate proceeding to establish a will and adjudicate the status of an estate, belongs to the class of actions in rem; and all who are concerned or interested are parties.

2. Where the existence of a later will is in question, in proceedings to prove an earlier one, the facts as to a motive and opportunity for its destruction cannot be ignored, and it is proper to show that if the will had ever existed it would have fallen under the control of persons who were beneficiaries in the other will.

3. The non-production of an alleged revoking will is immaterial in contesting a proceeding to prove a former one, if there is sufficient evidence that it ever existed.

4. Such facts in regard to a testator's fortune and the circumstances and relations of his family, within his knowledge, as would naturally influence him in his testamentary dispositions, are admissible on proceedings to prove his will.

5. Mere general objections to evidence need not be noticed unless the true point of the objection is plain.

6. When a will has once been expressly revoked by a later one, nothing can ever be claimed under it, even though the later will has been lost or destroyed.

Error to Kalamazoo.    (Mills, J.)    Oct. 5–9.—Dec. 20.

APPEAL from probate. Contestants bring error. Reversed.

*Edwards & Stewart* for appellants.

*O. W. Powers* for proponent appellees.    When a will has been shown to be last seen in the testator's possession, and cannot be found upon full search, the law presumes it to have been destroyed by the testator, for the purpose of revoking it: Cheever's Probate Practice 45; *Lawyer v. Smith* 8 Mich. 411; 1 Redf. on Wills 328, 330.

GRAVES, C. J.    Several terms since we had occasion to review this cause, and we sent it back for another trial.    It will be found in 48 Mich. 518, entitled "*In the Matter of Amelia A. Hope et al.*"    It now reappears on various exceptions taken by contestants on the second trial.    But a large portion of them are, in our view, so plainly unimportant as to require no comment.    We have only to pay attention to what the inquiry is, and what it concerns, and mark the bearings of the actual contention, to obtain a solution of all the points propounded in the record.

The cause is not an ordinary action at law where one specified party is seeking to recover damages or property from another.    It is a case of probate, and it belongs to the class of actions in rem.    The object is to establish a will, to have the status of an estate adjudicated, and all who are concerned or interested are parties.    *Allison v. Smith* 16 Mich. 405.    The course of evidence is determined by the nature of the inquiry and the substance of the issue.

Isaac Stevens, the supposed testator and an old man, died at his home in Kalamazoo on the 13th of December, 1879. His estate was estimated at about $15,000.    He left three

sons, Jackson, Isaac P. and Lafayette Stevens, and six daughters. The will offered for probate was made seventeen years prior to his death, being dated April 23, 1862. At the time it was made he was living with his wife Betsey, and a liberal provision was inserted for her benefit. But she died sometime afterwards. In 1874 the son Lafayette married and came to reside with the testator, and in 1877 the latter intermarried with the mother of Lafayette's wife, and the four resided together up to the testator's death. The other children lived by themselves. Jackson, the eldest of the brothers, and Isaac P. resided on small farms near by.

The dispositions made by the will of 1862 appear from its terms. A copy is given below.[1] The formalities of this

---

[1] *In the name of God, amen.* I, Isaac Stevens, of the township and county of Kalamazoo, and state of Michigan, being of sound mind and memory and understanding, do make and declare this to be my last will and testament.

*First.* I desire my just debts, funeral and testamentary expenses, to be fully paid and satisfied.

*Second.* I give, devise, and bequeath unto my wife, Betsey Stevens, the use and benefit of all real and personal estate I may die seized of, and all rents, interest, and profits arising therefrom, during the term of her natural life, and so to be used by her for her own use and benefit.

*Third.* After the decease of my said wife, I give, devise and bequeath unto my sons Isaac P. Stevens and Lafayette Stevens all and singular whatsoever real and personal estate I may die seized of, and of whatever name or nature, and wheresoever situate, subject, however, to the use of all rents, interest and profits arising therefrom to my said wife, Betsey, during her life; and further subject to the payment by said sons Isaac P. and Lafayette Stevens within one year after the decease of my wife, or before if they elect, of the following legacies, to-wit:

I direct that within one year after the decease of my said wife my sons aforesaid shall pay to Martha Eastland, widow of Joseph Eastland, the sum of ten dollars.

To Amelia Hope, wife of Edward Hope, the sum of one hundred dollars.

To Helen, the wife of Charles Dodson, the sum of two hundred dollars.

To Eliza Henika, the wife of Frederick Henika, the sum of one hundred and fifty dollars.

And to my other daughter, Ann Stevens, the sum of one hundred dollars.

To Jackson Stevens (my son) the sum of five dollars.

And I do hereby charge my real and personal estate with the payment thereof, and upon such payment being so made to them, their several receipts shall be taken therefor.

Hereby revoking all other or former will or wills by me at any time made, I do declare this to be my last will and testament, and do appoint my son-in-law, Frederick Henika, executor thereof.

In testimony whereof I have hereunto set my hand and affixed my seal this twenty-third day of April, one thousand eight hundred and sixty-two.

ISAAC STEVENS. [Seal.]

instrument have not been questioned. The broad issue
arises on proponent's allegation that it is decedent's last
will. The contestants deny that it is so. They contend
that he revoked it, and they specify the manner. They
aver that in 1879, and a short time prior to his death, he
executed another will containing express words of revoca-
tion, and which was drawn by Rollin Wood and witnessed
by him and one Arnold Van Lockem. This will is not pro-
duced. But the claim of contestants that the decedent
actually executed such a will has much testimony in its
favor. The proponents make use of its non-production as
an argument that no such will was ever made, notwithstand-
ing the independent indications to the contrary, and in this
connection they cite the doctrine to which prominence is
subsequently given in the charge, that where it is shown
that a will was once in existence, and was in the testator's
possession when last heard of, the circumstance that it is
not found at his death raises a presumption of the fact that
he destroyed it with intent to cancel it. *Idley v. Bowen* 11
Wend. 227; *Betts v. Jackson* 6 Wend. 173; *Bulkley v.
Redmond* 2 Bradf. Sur. 281; *Foster's Appeal* 87 Penn. St.
67; *Newell v. Homer* 120 Mass. 277; *Mercer v. Mackin*
14 Bush 434; *Brown v. Brown* 8 El. & Bl. 884. The
aptness and force of this citation will be noticed further on.

The contestants assume to meet this argument against the
existence of the second will attempted to be drawn from
its non-production, by contending that the widow, together
with Lafayette and Isaac P., the chief beneficiaries under the
will of 1862, fraudulently suppressed it, and this theory is
not destitute of evidence. Moreover, the record contains
grounds for argument that the papers of the testator, includ-
ing the second will, in case there was one, fell under the
control of the widow and the proponents at his death. This
is a consideration which could not be overlooked in a dis-
cussion turning on the influence of presumptions. *Schultz
v. Schultz* 36 N. Y. 653. The presence of motive and op-
portunity could not be wholly disregarded. But it is need-
ful to return to the vital issue.

The final question is not whether the supposed will of 1879 was revoked by the testator, or whether it was in existence at his death, or whether the widow and the two sons suppressed it. The present proceeding is not to establish that will. The purpose is to decide whether the will of 1862 shall be established or not, and that is made to depend on whether the testator did or did not execute the alleged second will. If he did not, then no objections appear to the establishment of the will of 1862. On the contrary, if he did, then it is immaterial what became of it, or whether an intestacy would arise; it put an end to the will of 1862. That no will of 1879 is produced is no doubt a circumstance which may be considered, along with others, on the question whether such a will ever in fact existed. Were it produced it would demonstrate its own existence and foreclose the issue. But if the facts and inferences are sufficient, notwithstanding its absence, to satisfy the mind that it once existed, its non-production is wholly immaterial on the present issue. *Wallis v. Wallis* 114 Mass. 510.

We have come again to the point where the proponents cite the presumption that the testator destroyed it. By this they antagonize their own position, because the proposition necessarily admits that the revoking will was once in existence, and if that be conceded it decides the case adversely to the will of 1862.

The case was tried on principles not in harmony with this opinion, and the record contains rulings which cannot be sustained. They were evidently prejudicial. We shall not dwell on details. In view of the explanation given it is not reasonable to suppose that former difficulties will be renewed.

In most instances the contestants in objecting to evidence merely stated the general principles on which they asked to have the favorable ruling of the court, and neglected to mention any specific ground. Objections made in this form are not entitled to notice unless it happens that the true point of objection is too palpable to call for anything more definite.

Such facts, in regard to the testator's fortune and the circumstances and relations of his family within his knowledge as would naturally influence him in respect to his testamentary dispositions, were proper to be considered. Whart. Ev. ch. 2. We find several rulings at variance with this view.

We think the charge was misleading. It did not confine the attention of the jury to the true issues, and it led them to look at immaterial matters as important if not controlling. Certain requests were accepted as accurate expressions of the law, and we find among them the statement that the revoking will, whether destroyed or not, would do away with the prior one. But the point was not allowed to rest on these requests. The judge took up the matter in his original observations, and laid it down expressly that the second will would only operate to revoke the prior one in case it remained in force at the testator's death. In this respect the direct instruction was an absolute contradiction of the statements read from the requests, and was, moreover, as we have seen, an erroneous explanation of the law. It is quite impossible to admit that the jury ignored this instruction.

The judgment must be reversed with costs and a new trial granted.

COOLEY and CAMPBELL, JJ. concurred.