[S. F. No. 5101.   Department One.—June 15, 1909.]

In the Matter of the Estate of CATHERINE PATTERSON,
Deceased.   FANNIE SMITH, Appellant, v. ELLA
QUIGLEY et al., Respondents.

ESTATES OF DECEASED PERSONS—WILL DESTROYED IN PUBLIC CALAMITY
—PROBATE OF INDEPENDENT PARTS PROVED BY BOTH WITNESSES—
INTESTACY AS TO DISAGREED PARTS.—When the will of a testatrix
attested by two witnesses was accidentally destroyed by fire in the
public calamity of April 18, 1906, without the knowledge or assent
of the testatrix, it was not revoked thereby; nor is it essential to
the probate of the will, that all of its provisions must be distinctly
proved by both witnesses; but independent portions of the will
clearly identified by both of them must be admitted to probate
under the amendment of 1907 to section 1339 of the Code of Civil
Procedure; while as to other independent parts of the will as to'
which the witnesses have disagreed, there can be no probate, and
an intestacy must be declared.

ID.—GENERAL RULE AS TO PROBATE OF LOST WILL—COMPLETE AND INDE-
PENDENT PROVISIONS.—Any substantial provision of a lost will
which is complete in itself and independent of the others, may, when
proved, be admitted to probate, though the other provisions cannot
be proved, if the validity and operation of the part which is proved
are not affected by those parts which cannot be proved.

ID.—CONSTRUCTION OF CODE AS TO PROOF OF LOST OR DESTROYED WILL.—
Section 1339 of the Code of Civil Procedure declaring that no will
shall be proven as a lost or destroyed will unless "its provisions are
clearly proved by at least two credible witnesses," does not say or
mean that a part thereof which is so clearly proved cannot be given
effect if some other part not affecting it in any particular cannot
be so established.

ID.—DEVISE OF REAL ESTATE—SPECIFIC LEGACY—PAYMENTS OF DEBTS
AND EXPENSES FROM RESIDUE.—When an independent devise of real
estate and a specific legacy to one person were clearly proved by
both witnesses, and the independent residue of personal property
was not so proved, the payment of debts and expenses of adminis-
tration not otherwise provided for, must be paid out of such residue,
if sufficient, and the land in any event could only be affected as a
last resort.

ID.—EFFECT OF WILL AT COMMON LAW AND UNDER CODE.—A will at
common law, and by the courts of England and of the United States
generally is regarded as a conveyance and takes effect as a deed
upon proof of its execution, unless there is some statute requiring
it to be probated; and in this state, though a probate is required,
the provisions of the code plainly imply that a will once duly

executed, has a recognized legal existence during the lifetime of the executor, if not revoked, and that it merely remains in abeyance until his death, and then becomes an effective instrument. The probate thereafter is merely operative as the authenticated evidence, and not as the foundation of the executor's title, which vests in him upon the testator's death. So, also, the title of devisees comes from the will, and not from its probate.

Id.—Construction of Amendment to Code—Remedial Provision—Power of Legislature—Prior Death.—The amendment of 1907 to section 1339 of the Code of Civil Procedure, as to the proof for probate of a will destroyed in a public calamity in the lifetime of the testator without his knowledge, relates only to the remedy, and is within the power of the legislature, notwithstanding the death of the testator or testatrix prior to its passage.

Id.—Rule as to Change in Law as to Estate of Heirs Inapplicable.—It is only when there is no effective will, and property has become vested in heirs that the legislature has no power to divest it by a subsequent law; but this rule has no application to a will which has been executed with all the formalities which the code requires, and which continued its potential existence, without revocation, and became effective upon the testator's death, and the change of law relates only to the subsequent remedy as to its admission to probate when destroyed accidentally in a public calamity.

Id.—Power of Legislature to Alter Rules of Evidence.—The legislature has full power to alter the rules of evidence and the degree of proof and make such rules applicable to pending cases; and it was competent for the legislature to dispense with the requirement that proof should be made that the will was in existence at the death of the testatrix, when it was accidentally destroyed without her knowledge.

Id.—Amendment as to Probate of Accidentally Destroyed Will not Retrospective.—The amendment to section 1339 of the Code of Civil Procedure in 1907 is not retrospective in its action, notwithstanding the death occurred prior to its passage. It relates only to the procedure and proof provided for prospectively upon the trial of the application for probate of the will. It has no effect upon previous trials or judgments. It is remedial in its nature and designed to serve only the subsequent proof of the testamentary right, when the will was accidentally destroyed in a public calamity.

Id.—Remedial Laws Growing Out of San Francisco Fire—Liberal Construction.—The public calamity referred to in the amendment of 1907 to that section doubtless refers to the great fire of San Francisco in which the will in question was burned, and is a calamity which has caused much legislation intended to alleviate its effect and preserve rights that would otherwise be lost for want of evidence. Such laws should be liberally construed to promote the purposes for which they are designed.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing to admit a will to probate as a destroyed will.  J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Bourdette & Bacon, and Andrew Thorne, for Appellant.

Heller, Powers & Ehrman, and Percy E. Towne, for Respondents.

SHAW, J.—This is an appeal from an order refusing to admit a will to probate as a destroyed will.

Catherine Patterson executed a will in December, 1904. It was prepared for her by her attorney, George A. Connolly, and was duly attested by him and by one Mary McFaul. It was then given by the testatrix into the custody of Connolly for safe keeping and was by him kept in his office in the Parrott building in San Francisco until April 18, 1906, when it was destroyed by fire in the great conflagration in that city following the earthquake of that date. The testatrix died on December 27, 1906. She had not been informed that the will was destroyed and, so far as appears, she died in ignorance of that fact. Letters of administration upon her estate were issued to Ella Quigley, a respondent herein, on January 24, 1907. On February 5, 1907, Fannie Smith, the appellant, filed a petition for the probate of the alleged will. Opposition was made thereto by said administratrix and also by J. C. O'Hare, a brother of the deceased. Upon the trial the court denied probate upon the ground that its provisions were not proven by two credible witnesses, and that it was not in existence at the time of the death of the testatrix and had not been fraudulently destroyed in her lifetime. The questions presented are whether or not these two grounds are sustained by the evidence and by the law applicable to the case.

The estate of the testatrix consisted of three parcels of real estate, some fifteen hundred dollars in money, deposited in bank, and some wearing apparel and household goods of the probable value of three hundred dollars. The evidence shows that the entire estate was worth only six thousand dollars. The deceased was the widow of James Patterson, and the property

was derived from him as the widow's share of his community property. The testatrix had no children and left no family. Patterson, her deceased husband, had three children who had been brought up by the testatrix and whom she usually spoke of as her children,—namely, Frank Patterson, George Patterson, and the appellant, Catherine Frances Smith, formerly Patterson, usually known as Fannie Smith.

1. The attorney who drew and attested the will testified that it devised the real estate in equal parts, one third to Fannie Smith, one third to Frank Patterson and one third to the children of George Patterson; that it gave a legacy of two hundred and fifty dollars to Joseph P. McQuaid; that it gave all the residue, without describing it, to Bridget Quigley, sister of the testatrix, and that it contained a general provision that all her debts should be paid. Mary McFaul, the other attesting witness, testified that she was present while the will was being written in the presence of the testatrix and that she heard it read by the attorney to the testatrix before its execution. Her account of the disposition of the real property is the same as that of Connolly. As to the personal property she testified that the will declared that the testatrix possessed fifteen hundred dollars on deposit in bank; that it gave a legacy of two hundred and fifty dollars to McQuaid and provided that after the payment of debts and expenses the residue of the fifteen hundred dollars should go to Bridget Quigley, and that nothing was said in the will about any other personal property.

The respondents contend that Mary McFaul testified in effect that the entire fifteen hundred dollars constituted a specific bequest to Bridget Quigley, subject to reduction only for its proportion of the debts and expenses of administration. We do not think it can be fairly construed as having that effect. Making due allowance for her ignorance of technical terms and forms, her testimony on this point in effect was that the McQuaid legacy and also the debts and expenses were to be paid out of the money in bank, the legacy to have preference therein.

When the provisions of law and the character of the estate are considered, the differences in the two accounts are substantial and important only with regard to the respective rights and interests of Bridget Quigley as legatee or heir and her brother, J. C. O'Hare, as an heir. For the payment of debts and general money legacies resort must be had: 1. To property

expressly appropriated by the will for that purpose; 2. To property not disposed of by the will; and 3. To property devised or bequeathed as a residue. (Civ. Code, secs. 1359, 1360.) Substantially the same rule applies to expenses of administration: if not otherwise provided for, specific devises and legacies are ordinarily exempt therefrom, if there is a sufficient residue, or sufficient property undisposed of. (Code Civ. Proc., sec. 1563.) Acording to Connolly's account the burden of paying the legacy to McQuaid, together with the debts and expenses of administration, would, by the provisions of the law, fall upon the property given to Bridget Quigley, being the entire residue, including the clothing and household goods. According to McFaul, the specific legacy of the fifteen hundred dollars to Bridget Quigley was charged with the payment of the debts, the expenses, and the McQuaid legacy and the clothing and household goods were not disposed of by the will. If her statement was correct, the legacy to Bridget Quigley would have to bear all these charges and she, as an heir, would divide the household goods and clothing equally with O'Hare. If Connolly was right, her residuary bequest would have to bear the charges, as in the other alternative, but she would get all the household goods and clothing. The only difference the respective alternatives would make to her and O'Hare would be that in the former case O'Hare would get nothing, while in the latter he would get one half of the property not disposed of. The devises of the land to the descendants of James Patterson would remain unaffected in either case. If Mary McFaul was right, and the fifteen hundred dollars proved insufficient to pay the charges upon it, the property undisposed of would be next resorted to, and the land devised to the Pattersons would be taken only as a last resort. If Connolly gave the true version, the entire residue would be first taken for the debts, expenses, and specific legacies, leaving the land to the devisees.

The contention of the respondent is that the lost or destroyed will cannot be admitted to probate at all, unless the whole of its provisions are clearly and distinctly proven by two credible witnesses; that if the two witnesses differ as to any provision of the will the probate thereof must be refused, although the other dispositions would be entirely unaffected by the portion of the will concerning which the witnesses do not agree.

The great weight of authority is contrary to this proposition. The prevailing rule, and clearly the most reasonable one, is that stated by Lord Chief Justice Cockburn in *Sugden* v. *Lord St. Leonards*, 1 Pr. Div. 144, 230. In that case the estate was very large, there were some small legacies the particulars of which could not be ascertained and some limitations, "remote, indeed, and unlikely to come into effect, but which still are undoubtedly omitted from the document for which probate" was granted. Justice Cockburn says: "We have the substantial dispositions brought to our minds, and it would not be right to enable any wrong-doer or any accident which might happen to a will, and which would prevent the court which had to deal with it from being perfect master of its contents, to prevent the will from being carried into effect so far as the dispositions of the testator had become known. I think there could not be a more mischievous consequence; and although it may be unfortunate that the will cannot be carried into execution to the full extent of the testamentary dispositions of the testator, I think that of the two evils or two inconveniences it is far better, where the court can see its way to the essentially substantial dispositions made in a will, that it should give effect to them, although possibly some of the intentions of the testator may not be carried into effect." In *Dickinson* v. *Stidolph*, 11 Com. B. (N. S.) 357, the court says: "The apparent testamentary intentions of a testator are not to be disappointed merely because she made other dispositions of her property which are unknown by reason of the testamentary paper which contained them not being forthcoming." The will referred to two prior testamentary memoranda, declaring that both should remain in force, and one of them could not be found. In *Steele* v. *Price*, 44 Ky. (5 B. Mon.) 72, several money legacies were not proven and as to that money there was intestacy. The court said: "As the principal devises, those in which the testator took the deepest interest, and about which he showed the most solicitude, are sufficiently proved, the failure of proof as to the minor provisions of the will, should not defeat the whole by preventing the admission to record, of that which is proved; and especially as it does not appear that the establishment of the devises as proved, though it would greatly reduce the fund to be distributed, will affect the relative

proportions which the heirs will receive." To the same effect see *Offutt* v. *Offutt,* 42 Ky. (3 B. Mon.) 163, [38 Am. Dec. 183]; *Skeggs* v. *Horton,* 82 Ala. 355, [2 South. 110]; *Woodward* v. *Goulstone,* 11 L. R. App. Div. 476; *Jackson* v. *Jackson,* 4 Mo. 211; *Dickey* v. *Malechi,* 6 Mo. 184, [34 Am. Dec. 130]; *Burge* v. *Hamilton,* 72 Ga. 568. It is also held that where the only part of a lost will that can be proven is a clause revoking a former will, such clause may be given effect for the purpose of showing a revocation. (*Wallis* v. *Wallis,* 114 Mass. 510; *Nelson* v. *McGiffert,* 3 Barb. Ch. 164, [49 Am. Dec. 170]; *Stevens* v. *Hope,* 52 Mich. 65, [17 N. W. 698]; *In re Cunningham,* 28 Minn. 171, [8 Am. St. Rep. 650, 36 N. W. 269]; *Barksdale* v. *Hopkins,* 23 Ga. 332; *Laughton* v. *Atkins,* 18 Mass. (1 Pick.) 548.) Underhill sums up the authorities thus: "Any substantial provision of a lost will, which is complete in itself and independent of the others, may, when proved, be admitted to probate, though the other provisions cannot be proved, if the validity and operation of the part which is proved are not affected by those parts which cannot be proved. This view seems to be consistent with reason and common sense." (1 Underhill on Wills, sec. 278. See, also, Thornton on Lost Wills, sec. 111.)

This rule is, of course, subject to the statutory provisions of the several states. Our statute on the subject declares that no will shall be proven as a lost or destroyed will, unless "its provisions are clearly and distinctly proved by at least two credible witnesses." (Code Civ. Proc., sec. 1339.) This does not say that a part which is distinctly proven cannot be given effect, if some other part, not affecting it in any particular, cannot be satisfactorily established. It would be a rare case in which two witnesses testifying from memory to the contents of a will would agree about every detail as to the testamentary dispositions. If it were required that their testimony should coincide in every particular, however minute and unimportant, in order to establish a lost will, the possibility of proving such will would be extremely remote, except where a copy in writing had been preserved and could be produced. If that were the case the practical effect of our statute would be the same as in those states where the production of a written copy or draft of the lost will is required. We cannot agree to the proposition that the legislature could have

intended such inconsequential results from this statute as
would ensue if it were given the construction contended for.
We think it was not intended to change the rule above stated.

In the present case, upon the proof made, the bulk of the
estate is composed of the land given to the Patterson children
as devisees. As to this disposition of the real property there
is no discrepancy and the provisions of the will are clearly
and distinctly proven. With regard to the personal property,
the question whether the money was given as part of the
residue and as such charged by statute with the debts and
specific legacies; or whether it was given as a specific legacy
charged by the will with those burdens, while more a matter
of form than substance, is nevertheless a question which mate-
rially affects the disposition of the personal estate. It is
obvious that, in view of the decision of the court below, we
must hold that the part of the will disposing of the personal
estate was not clearly or distinctly proven by two witnesses
and it must be declared ineffective as to that property, except
with respect to the legacy to Joseph P. McQuaid. Proof of
that legacy was clear and distinct and the testimony of the
two witnesses regarding it was the same. Under the rule we
have stated the proof was sufficient to authorize the admission
to probate of that part of the will devising the real estate and
bequeathing the two hundred and fifty dollars to McQuaid.
The consequence is that as to the other personal property
Catherine Patterson would be declared to have died intestate.
The property undisposed of would be first liable for the debts,
expenses of administration, and the McQuaid legacy, the resi-
due, if any, going to the brother and sister as the heirs at
law, while the real estate will go intact to the devisees, except
in the event that some part of it is required for the payment
of debts and expenses of administration.

2. The second question arising and presented is whether or
not the amended section 1339 of the Code of Civil Procedure
applies to this will. At the time of the death of the testatrix
that section read as follows:—

"No will shall be proved as a lost or destroyed will, unless
the same is proved to have been in existence at the time of the
death of the testator, or is shown to have been fraudulently
destroyed in the lifetime of the testator, nor unless its pro-
visions are clearly and distinctly proved by at least two
credible witnesses."

On March 6, 1907, after the filing of the written grounds of opposition to the probate of the will, and more than a year prior to the conclusion of the trial of the matter, the section was amended so as to read as follows:—

"No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently or by public calamity destroyed in the lifetime of the testator, without his knowledge, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses." (Stats. 1907, p. 122.)

The will was not in existence when the testatrix died and it was not fraudulently destroyed in her lifetime. Consequently, it could not be proven as a destroyed will, except by virtue of the amendment of 1907 aforesaid. If that amendment applies to wills of persons who died before it was enacted it would permit the probate of the will in question. The evidence shows that the will was destroyed by public calamity in her lifetime, without her knowledge, but the court below deemed the fact immaterial and made no finding to that effect, it being of the opinion that the amendment of 1907 did not apply.

The contention of the contestants is that under the law as it existed at her death the will was not merely incapable of proof because of lack of evidence, but that it was absolutely void and constructively non-existent, that, consequently, the deceased died intestate, that the estate immediately thereupon vested in the heirs, and that the legislature could not, by a subsequent law enlarging the classes of destroyed wills admissible to probate, take that estate from them.

There can be no doubt of the rule that if the estate once vested in the heirs the legislature had no power thereafter by a subsequent law to divest it. And it is a well settled proposition that where some essential ceremony in the matter of executing a will has been neglected, so that the will is not lawfully executed, and such essential requisite has been dispensed with by a law enacted after the death of the person attempting to make such will, the law cannot be applied thereto and the person must be held to have died intestate. (*McCarty* v. *Hoffman*, 25 Pa. St. 502; Walter's Appeal, 67 Pa. St. 344, [5 Am. Rep. 433]; *Giddings* v. *Turgeon*, 58 Vt. 106, [4 Atl.

711].) . These cases rest upon the general rule that a will not executed in the prescribed manner is no will and has no potential existence. One who dies leaving such a testamentary paper only, dies intestate and his property at once vests in his heirs. (*Estate of McCabe,* 68 Cal. 519, [9 Pac. 554] ; Civ. Code sec. 1384.) The opinions in the cases above cited do not especially emphasize this proposition, but they are all manifestly based upon it as a postulate.

This rule does not apply to the present case. The will of Catherine Patterson was executed with all the formalities which the code requires. From the time of its execution, in December, 1904, until its destruction in April, 1906, it was in all respects a valid will, having a potential existence as such and subject to be defeated only by the act of the testatrix wholly or partially revoking or altering it. After its destruction without her knowledge, and until she became aware thereof, we must assume that she still believed it had such existence and that it would become effectual upon her death. She died in that belief. The essential question involved is: Had this will, after its destruction, a potential existence, subject to defeat only by reason of the impossibility of proof under the law then existing, or did such destruction make it absolutely void in the sense that it was thereafter no will at all?

Our statute nowhere declares that such destruction during the lifetime of the testator destroys the *status* of a will as an executed instrument. The Civil Code provides that any person over the age of eighteen years and of sound mind may dispose of all his estate by will, and directs the manner in which wills may be executed and revoked. (Civ. Code, secs. 1270, 1276, 1277, 1289, 1292, 1304.) The sections concerning the revocation of wills are elaborate and specific. It is expressly declared that a revocation can be made only in the manner and by the means prescribed in that chapter. (Civ. Code, sec. 1292.) Destruction, without intention to revoke, or by accident, is not a prescribed method of revocation. Under the code, therefore, such destruction does not operate to revoke a will. These provisions plainly imply that a will, once duly executed, has a recognized legal existence during the lifetime of the testator, if not revoked; that it merely remains in abeyance until his death and then becomes an effective instrument.

This is in accordance with the rule at common law. "A will is regarded by the courts of England and the United States as a conveyance, and takes effect as a deed, upon proof of its execution, unless there is some statute requiring it to be probated." (*Castro* v. *Castro,* 6 Cal. 161; *Grimes* v. *Norris,* 6 Cal. 625, [65 Am. Dec. 545]; *Tevis* v. *Pitcher,* 10 Cal. 477; *Emerick* v. *Alvarado,* 64 Cal. 565, [2 Pac. 418]; *Adams* v. *Norris,* 23 How. (U. S.) 363.) In the cases above cited it was held that wills made by persons who died prior to the passage of the first probate act of this state were not required to be probated, and that they could be proven in the same manner as a deed or other instrument in writing, either by the production of the original, or, after proof of loss, by secondary evidence of its contents.

It has been held by this court that a will cannot be given in evidence as the foundation of a right or title, unless it has been duly probated (*McDaniel* v. *Pattison,* 98 Cal. 86, [27 Pac. 651, 32 Pac. 805]; *Castro* v. *Richardson,* 18 Cal. 480). The amendment of 1895 [Stats. 1895, p. 72] to section 738 of the Code of Civil Procedure, makes an exception to this rule in suits brought under that section. Under our system, the probate of the will is made a condition precedent to the introduction of evidence of its contents, in the subsequent settlement and distribution of the estate, and in any collateral matter, except in the cases provided in the amendment aforesaid to section 738. But although the probate of a will is generally necessary to its introduction in evidence, such will is not brought into legal existence by the judgment admitting it to probate. Such probate merely declares in a formal way the existence of facts which have previously occurred and furnishes official evidence of those facts. In speaking of the title of the executor, under the common law, to the personal estate of the testator, Mr. Williams says: "The probate is, however, merely operative as the authenticated evidence, and not at all as the foundation, of the executor's title; for he derives all his interest from the will itself, and the property of the deceased vests in him from the moment of the testator's death." (1 Williams's Executors, 7 Am. ed. 354, p. *243.) A devise of lands at common law was considered "not so much in the nature of a testament, as a conveyance by way of appointment of particular lands to a particular devisee." (1 Williams's Ex-

ecutors, 7 Am. ed. 4.) Under our code the devisees and lega-
tees take at the moment of the testator's death, and their title
comes from the will itself and not from the probate thereof.
The probate procedure was established to furnish an exclusive
mode for the settlement of all disputes concerning the execu-
tions of wills, and to provide conclusive evidence of their
contents. It is remedial in its nature. It relates to the rem-
edy and is not the foundation of the rights of those claiming
under the will. "Whatever belongs to the remedy may be
altered according to the will of the state." (Cooley on Con-
stitutional Limitations, pp. 406, 409, 515.)

The testatrix, Mrs. Patterson, had exercised her testamen-
tary power by a duly executed will which would take effect
upon her death, but which could not be admitted in evidence
against the heirs until after it was probated. In her lifetime,
but without her knowledge, it was destroyed in a public
calamity. Because of its destruction in her lifetime the probate
court, under the law as it existed at her death, could not allow
it to be probated, because there could be no legal proof of it.
After her death the legislature removed this impediment by
making wills destroyed in a public calamity provable. The
heirs had no vested right to have this law forbidding the
probate of such wills continued in force. Their right to the
estate of the ancestor was given by statute, and it was con-
tingent upon the fact of there being no will in existence
which could be proved. If a will had been duly executed
and had not been destroyed, but was filed for probate, and
could not be probated because of lack of proof of its execu-
tion, the heirs would take the estate and it would be deemed
to vest in them at the death of the testatrix, although the
right thereto could not be positively known until it was dem-
onstrated by the failure of proof upon the trial of the petition
for probate. The statute provides what evidence may be
taken in proof of a will upon such a proceeding. Can there
be a doubt that if a law were passed after the death of a
testator, allowing evidence of execution previously forbidden
as hearsay, such proof could not be accepted and the will
established, although, but for that evidence, the will would
be defeated and the estate would go to the heirs? Or, in the
case of a lost will, would it be questioned that a law making
one witness sufficient would not apply to wills of persons who

had died prior to the passage of such law? The legislature has full power to alter the rules of evidence and the degree of proof and make such rules applicable to pending cases. (Cooley on Constitutional Limitations, p. 409.) It was competent therefore for ·the legislature to dispense with the requirement that proof should be made that the will was in ·existence at the death of the testatrix.

It is a mistake to characterize the amendment of section 1339 as a retrospective law. It relates wholly to what shall be done upon the trial of the application for probate, the proof that must be furnished and the facts which must be established. It applies only to trials which take place after its enactment. It can have no effect whatever upon previous trials or judgments. It is prospective only in its nature. It is remedial in its nature and is designed to preserve the testamentary right. The public calamity referred to in the amendment is doubtless the great fire of San Francisco in which this will was burned, a calamity which has caused much legislation intended to alleviate its effect and preserve rights that would otherwise be lost for want of evidence. Such laws should be given a liberal construction to promote the purposes for which they are designed. We are of the opinion that section 1339 should apply to all cases subsequently tried, regardless of the time of the testator's death.

The order denying probate of the will is reversed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.