[L. A. No. 6354.  In Bank.—June 1, 1921.]

## In the Matter of the Estate of AUGUSTA THOMPSON, Deceased.

[1] ESTATES OF DECEASED PERSONS—LOST OR DESTROYED WILL— TESTIMONY OF ONE WITNESS—DECLARATIONS OF DECEASED—IN- SUFFICIENT PROOF.—In view of section 1339 of the Code of Civil Procedure, which provides that no will shall be proved as a lost or destroyed will unless its provisions are proven by at least two credible witnesses, a lost or destroyed will cannot be proven by the testimony of one witness who saw the original will and by evidence of the declarations of the testatrix as to its con- tents.

[2] ID.—REVOCATION OF WILL—EFFECT UPON EXISTING PRIOR WILL— EVIDENCE—PROOF OF CONTENTS BY ONE WITNESS.—Where a will containing a revoking clause has been revoked by cancellation or otherwise, evidence of the contents of the will may be considered to determine the effect of the revocation upon an earlier will still in existence, and such contents may be established by the testimony of one witness.

---

1. Declarations of testator alone as proof of contents of lost will, notes, 3 Am. Dec. 395; 107 Am. St. Rep. 459; Ann. Cas. 1915B, 253.

Evidence to establish lost or destroyed wills, notes, 38 L. R. A. 433; 50 L. R. A. (N. S.) 864.

Declarations of testator as admissible upon issue of revocation of will which cannot be found, notes, 3 Ann. Cas. 960; 14 Ann. Cas. 284; Ann. Cas. 1914C, 909; Ann. Cas. 1918E, 370.

2. Effect of revocation of later will to revive an earlier one, notes, 76 Am. Dec. 652; 45 Am. Rep. 327; 4 Ann. Cas. 313; 13 Ann. Cas. 245; Ann. Cas. 1913E, 120; Ann. Cas. 1916E, 718; 37 L. R. A. 575; 14 L. R. A. (N. S.) 937; 37 L. R. A. (N. S.) 291.

[3] ID.—WILL CONTEST—UNREVOKED WILL—SUFFICIENCY OF EVI-
DENCE.—In this proceeding for the probate of a will which was
contested on the ground that the will had been revoked by a
later will which was alleged to have been destroyed without the
intention of reviving the former will, the declarations of the
testatrix and the circumstances of the case are held sufficient
to sustain the finding that the later will was still in existence
at the time of her death.

[4] ID.—UNREVOKED LOST OR DESTROYED WILL—REVOCATION OF FOR-
MER WILL—EVIDENCE—PROOF OF REVOKING CLAUSE—TWO CREDI-
BLE WITNESSES.—In view of section 1339 of the Code of Civil
Procedure, which provides that no will shall be proved as a lost
or destroyed will unless its provisions are clearly and distinctly
proved by at least two credible witnesses, two witnesses are re-
quired to prove that a lost or destroyed will, which was unrevoked
at the time of the death of the testatrix, contained a clause re-
voking former wills, where it is sought by such proof to show
the revocation of an earlier will.

[5] ID.—WILL—INTENTION OF TESTATOR—CONSTRUCTION OF WHOLE IN-
STRUMENT.—A will should be construed as a whole and the
intention of the testator derived from the whole instrument and
not from a single clause thereof.

[6] ID.—PROOF OF REVOKING CLAUSE OF WILL.—In order that the
revoking clause in a lost and unrevoked will shall be effective as
such, it is necessary to establish that such clause was in the
will and thus an effective part of it.

[7] ID.—REVOKING CLAUSE—PART OF WILL.—The revoking clause of
a will is a part of the will and is to be treated as such, and not
as a separate instrument having the equivalent effect of an in-
strument executed with all the formalities required in the case
of a will.

[8] ID.—REVOCATION OF REVOKING WILL—CONSTRUCTION OF CODE—
INAPPLICABILITY TO UNREVOKED WILL.—Section 1297 of the Civil
Code, which declares the revocation of a revoking will does not
revive the first will unless it appears by the terms of such revoca-
tion that it was the intention to revive or give effect to the
first will, does not determine the effect of an unrevoked revoking
clause of a lost or destroyed will, and whatever inferences are to
be drawn therefrom with reference to the nonambulatory charac-
ter of the revoking clause cannot overcome the more direct
declarations of section 1339 of the Code of Civil Procedure as to
the *quantum* of proof for a lost or destroyed will.

6. Necessity of proof of contents of subsequent will in order that it
may revoke prior will, note, **Ann. Cas.** 1914D, 130.

APPEAL from an order of the Superior Court of Los Angeles County admitting a will to probate. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

Jas. W. Bell for Appellant.

L. G. Susemihl and Samuel J. Crawford for Respondent.

WILBUR, J.—Respondent, the sister of the deceased, filed a will dated May 13, 1908, for probate. The surviving husband, the appellant, filed a contest of this will on the ground that the will had been revoked by a later will executed November 25, 1916, which will he alleged had been destroyed without the intention of reviving the former will. Thereupon the sister filed a petition for the admission to probate of the will of 1916 as a lost or destroyed will. She also answered the contest of the will of 1908 by denying that the will of 1916 had been destroyed with the intention to revoke the same. Appellant filed no formal contest to the will of November 25, 1916, but he appeared at the time of the hearing, presented evidence, and claimed that the existence of the lost will was not established by two witnesses, and opposed its probate on that ground.

The will of 1916 appointed the respondent executrix without bonds and left all the property of the testatrix to the respondent except a bequest of five dollars to the appellant; another five dollars to a brother of testatrix, and one of five dollars to a half-brother. The will also made certain provisions applicable only in the event that respondent predeceased her, which, because the sister survived the deceased, are immaterial. By the will of 1908 the respondent was made executrix thereof without bonds, and everything was given to the respondent except one dollar bequeathed to the appellant.

At the time of the trial the respondent contended that the will of 1916 could not be proved because there were not two witnesses to prove its contents as required by section 1339 of the Code of Civil Procedure. Respondent offered proof of the due execution of the will of 1908, and thereupon rested. The court took the position that the second petition of re-

spondent for the probate of the will of 1916 was in effect an amendment of the original petition for the probate of the will of 1908 and, therefore, announced that the will of 1908 could not be admitted to probate.

Respondent thereupon stated her position thus: "We are claiming under the first will absolutely, if your honor please. It cannot prejudice the contestant's right for me to say that when we submitted the copy, so-called copy, of what we thought we might be able to establish in accordance with the law of a lost or destroyed will, that we believed that both witnesses to the second will were still alive and that we could prove it under the statute that requires a lost or destroyed will to be proved by two credible witnesses. We filed that and made that similar statement to his honor, Judges Rives, on the hearing of this first will."

The court took the position that if there was a later will, whether its terms could be proven or not, the first will was thereby revoked, and directed respondent to proceed with proof of the lost will. Respondent's counsel protested that they desired to rest with proof of the first will, and proceeded under protest to call B. G. Hurlburt, stating "there is only one witness we know of that could prove this will, and we will call that gentleman. That is the only witness we have any knowledge of." This witness testified to the contents and the due execution of the will of 1916. The only other witness testifying to the contents of the will of 1916 was the respondent, who was examined on that subject by the court. To this testimony respondent's attorney objected as follows: "I would like to object to her positive testimony that she received a copy on the ground that it is hearsay and not the best evidence." The objection being overruled the court elicited the testimony of the witness to the effect that respondent had received a letter at Portland, Oregon, in 1916, from the testatrix inclosing a copy of the will of 1916, and stating that it was her last will. The letter itself had been destroyed. The statement that the enclosed copy of a will was her last will was merely a declaration of the testatrix, so that the question presented here resolves itself into this: [1] Can a lost or destroyed will be proved by the testimony of one witness who saw the original will and by evidence of the declarations of the deceased as to its contents? The fact that the decedent accompanied her declara-

tion by a carbon copy of the will did not place the recipient thereof in a position to testify of her own knowledge as to the contents of the lost or destroyed will, which she had never seen. Her testimony would merely establish the hearsay declaration of the deceased. In this state the statute (Code Civ. Proc., sec. 1339), requires two credible witnesses and the testimony of the declarations of the decedent cannot supply the place of one of these witnesses. This was held by the supreme court of the state of Washington, under a similar statute, in *Estate of Needham,* 70 Wash. 229, [126 Pac. 429], and as we agree with that decision, the order admitting the will of 1916 to probate must be reversed: The will of 1916 should have been denied probate.

[2] The next question to be considered is whether or not the evidence of one witness to the due execution of the will of 1916, and to its contents is sufficient to show a revocation of the will of 1908, and thus to show that the will of 1908 was not the last will of the decedent, and hence, as the will of 1916 cannot be effectively established by probate, that the decedent died intestate. If the will of 1916 had been revoked by cancellation or otherwise, the evidence of one witness to the contents of the will of 1916 would be sufficient to establish that it contained a revoking clause, for section 1297 of the Civil Code declares that the revocation of a revoking will does not revive the first will "unless it appears by the terms of such revocation that it was the intention to revive and give effect to the first will." No doubt can be entertained that where the second testamentary act is revoked, evidence of the contents of the revoked will may be considered to determine the effect of such revocation upon an earlier will still in existence.

[3] This is not a case where a will containing a revoking clause has been destroyed *animo revocandi.*

The trial court found that the will of 1916 was in existence at the time of the death of the testatrix and was her last will. The finding is attacked by the appellant as not supported by the evidence. This finding is sustained solely by the declaration of the deceased and by the circumstances in the case. But the evidence is sufficient. This evidence is as follows: During her last illness the testatrix frequently stated to her nurse that she had left a will and that her papers were with her attorney, B. G. Hurlburt, and confirmed this

statement only a few hours before her death on December 8, 1918. She further stated she desired her sister to have everything and did not desire her husband to have anything. The respondent testified that repeatedly between the date of the execution of the will up to July, 1918, the testatrix wrote to her stating that she wanted respondent to have everything and repeatedly referred to the will as still in existence.

As we have held in the *Estate of Sweetman, ante,* p. 27, [195 Pac. 918], the declarations of the deceased in connection with the other testimony were sufficient to sustain the findings of the trial court that the will was in existence at the time of decedent's death.

[4] The appellant, while contending that the evidence is insufficient to probate the will of 1916 as the last will and testament of the deceased, a contention which we have sustained, also contends that the proof of one witness that it contained a revoking clause is sufficient to establish the revocation of the will of 1908 by the will of 1916, although the latter cannot be probated as her will, and thus by the failure to prove the will of 1916, as a will and by its proof as an effective revocation of the will of 1908, to establish her intestacy. This position requires us to construe the law as to the proof of lost and destroyed wills and to determine what is meant by this phrase in section 1339 of the Code of Civil Procedure: "*No will shall be proved as a lost or destroyed will . . . unless its provisions are clearly and distinctly proved* by at least two credible witnesses." (Italics ours.) To state the proposition in somewhat different terms, Can a part of a lost or destroyed will be proved by one witness, i. e., the revoking clause, when the statute expressly forbids proving a lost or destroyed will by less than two credible witnesses? Or, to state the matter in terms more directly applicable to this case: Can the revoking clause of an *unrevoked,* lost, or destroyed will be proved by one witness and given effect, when the statute (Code Civ. Proc., sec. 1339), requires two witnesses to prove such a will? This question would seem to carry its own answer because of the axiom that the whole is the sum of its parts, unless the revoking clause in a will is in legal effect a thing apart from the will, as distinct as, and equivalent in legal effect to, a revocation by destruction, by cancellation or by an instrument executed

with the formalities of a will (Civ. Code, sec. 1292), which, no doubt, operates *eo instanti*.

Passing for the moment the construction of section 1297 of the Civil Code, as to the effect of the *revocation* of a will containing a revoking clause, a point to which we will recur, it is a violation of the most fundamental principle for the construction of a will to separate one clause from its context and give effect thereto regardless of the balance of the will. [5] It is elementary that a will should be construed as a whole, and that the intention of the testator is to be derived from the whole instrument and not from a single clause thereof.

In dealing with a revoking clause of a revoked will we are dealing with a clause which has itself been revoked except as saved by the express statute on that particular subject (Civ. Code, sec. 1297), but in dealing with the revoking clause of an *unrevoked* will, it has force because it is unrevoked, and a part of the last will of the deceased.

We will examine some of the authorities dealing with the subject of the revoking clause in a will with special reference to its provability, but before doing so it is well to remember that frequently the revoking clause of a will is the only clause capable of proof because it is the only portion clearly recollected by witnesses, and that some of the cases deal with such a situation. It is well to remember, also, that at common law, and in most states, there is no arbitrary rule with reference to the measure of proof required to establish a lost will, and hence the measure of proof for a revoking clause of such a will would be the same whether offered for probate or to defeat a prior will, while the contention here is that the will of 1916 is sufficiently proved for the latter but not for the former purpose. It is evident that general statements in opinions dealing with the subject, or even rules laid down with reference to the effect of a revoking clause, ought not to be considered determinative of the matter under our peculiar statute where an arbitrary rule exists with reference to lost and destroyed wills.

[6] In order that the revoking clause in this lost and unrevoked will should be effective as such, it was necessary to establish that such clause was in her last will, and thus an effective part of her last will. A will is usually "proved" by being offered for probate. Can its terms be "proved"

otherwise? As was said in the *Estate of Patterson*, 155 Cal. 626, 636, [132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654, 102 Pac. 941, 944]: "It has been held by this court that a will cannot be given in evidence as the foundation of a right or title, unless it has been duly probated (*McDaniel* v. *Pattison*, 98 Cal. 86, [27 Pac. 651, 32 Pac. 805]; *Castro* v. *Richardson*, 18 Cal. 480)." In that case the court was discussing the result of the destruction of a last will and testament without the intention of revoking the same, and was considering the effect of the amendment of 1907 to section 1339 of the Code of Civil Procedure (Stats. 1907, p. 122), passed after the death of the testatrix. It was held that the will could be probated. In that connection it is said: "Because of its destruction in her lifetime the probate court, under the law as it existed at her death, could not allow it to be probated, because there could be no legal proof of it. . . . If a will had been duly executed and had not been destroyed, but was filed for probate, and could not be probated because of lack of proof of its execution, the heirs would take the estate and it would be deemed to vest in them at the death of the testatrix, although the right thereto could not be positively known until it was demonstrated by the failure of proof upon the trial of the petition for probate. The statute provides what evidence may be taken in proof of a will upon such a proceeding."

Where a will has been refused probate because of undue influence, the revoking clause cannot be subsequently proved to show revocation of a prior will (Schouler on Wills, 5th ed., secs. 418, 419; *Laughton* v. *Atkins*, 18 Mass. (1 Pick.) 535; *Rudy* v. *Ulrich*, 69 Pa. St. 177, [8 Am. Rep. 238]; *Lyon* v. *Dada*, 127 Mich. 395, [86 N. W. 946]). This is true even if it is shown in the latter case that the revoking clause was not obtained by undue influence, as the decision rejecting it for probate is conclusive between the parties. The effect of these decisions is that where a will has been denied probate and the same parties are subsequently litigating the validity of a prior will, the validity of the revoking clause cannot again be relitigated. Applied to the facts of this case these decisions would lead to the conclusion that where a will had been offered for probate as a lost or destroyed will and had been denied probate, because of failure of proof, the adjudication between the parties as to the prov-

ability of the will and the validity of the revoking clause can-
not subsequently be reopened in a case in which the revoking
clause alone is put forward for the purpose of showing that
a previous will has been revoked.  If it is true that the de-
nial of probate of the second will because of the lack of
proof by two credible witnesses forecloses the question as to
the provability of the revoking clause for the purpose of
opposition to the probate of the first will, then it would seem
to follow that the will of 1908 in this case, having been duly
proven, should be probated notwithstanding the fact that it
has been shown by one witness that there was a revoking
clause in the will of 1916, where, as here, the appropriate
order is one denying the probate of the will of 1916 for lack
of proof.  We do not cite these decisions as decisive of the
question here involved, but they point to the conclusion indi-
cated.

[7]  These cases at least make it clear that the revoking
clause of a will is a part of the will, and is to be treated as
such, and not as a separate instrument having the equivalent
effect of an instrument executed with all the formalities re-
quired in the case of a will (Civ. Code, sec. 1292).  This will
be made clearer by excerpts from the above opinions.  In the
case of *Laughton* v. *Atkins*, 18 Mass. (1 Pick.) 535, it is said:

"When the question was first proposed, it struck us all as
novel and singular, that an instrument once offered to be
proved as a will, and disallowed as such by the court of final
jurisdiction upon the subject, should be imagined to be capa-
ble of being used afterward for any purpose whatever; the
effect of such a decree seeming to be, to render the instru-
ment entirely null and void; but the arguments we have
heard, and the authorities cited, have satisfied us that the
case was not so clear as we at first believed it, though upon
a thorough examination of the arguments and authorities we
are convinced our first impression was well founded. . . ."

After quoting the statutory law of Massachusetts, the
court proceeded as follows:

"An instrument, then, to have the effect of a revocation of
a will which devises real estate before made, must be in it-
self either a will or codicil; or some other writing of the
devisor, signed in the presence of three or more witnesses.
If the instrument propounded as a revocation be in form a
will, it must be perfect as such, and be subscribed and at-

tested as is required by the statute. An instrument intended to be a will, but failing of its effect as such on account of some imperfection in its structure or for want of due execution, cannot be set up for the purpose of revoking a former will, for this substantial reason, that it cannot be known that the testator intended to revoke his will except for the purpose of substituting the other, and that it would be making the testator die without a will, though it was clearly his design not to do so. This principle has been settled by many decisions in the English courts of law and equity, their statute of frauds in relation to this subject being similar to ours. . . .

"It is true the instrument is perfect in all its parts, and is accompanied with all the formalities prescribed by the statute; but it comes before us connected with a decree declaring that it is null and void in itself, so that it never had any legal force or being as a will; how, then, can it be treated as such for the important purpose of revoking a former will? If the principle deduced from the cases cited is true, that all we can see of a design to revoke is indicative of a purpose to substitute this for the one revoked, then, to give effect to the revocation, and to deny any effect to the dispositions of the will, would be to thwart the intentions of the testatrix. How can we know from the will itself, that she would not have preferred that the first will should stand, rather than that the heirs at law should enjoy the estate? It is obvious she meant no good to them in either of the wills."

The Pennsylvania case above cited (*Rudy* v. *Ulrich*, 69 Pa. 177, [8 Am. Rep. 238]), also emphasizes the injustice of giving effect to the revoking clause of a will when the balance of the will has been denied probate, and distinguishes, in that respect, a will containing an express revocation from an instrument of revocation, executed with the formalities of a will. The statute of Pennsylvania on the subject of revocation is similar to our own (Civ. Code, sec. 1292). The supreme court of Pennsylvania in that case states its reasons for its conclusion that the revoking clause cannot be given effect separate from the will containing it, in part, as follows: "The Act of Assembly of April 8th, 1833, Secs. 13, 14, Pamph. L. 250, provides in effect that no will in writing shall be repealed otherwise than by some other will or codicil in writing, or by other writing declaring such repeal, ex-

ecuted and proved in the same manner as is provided in the case of an original will. There are two modes of revocation here pointed out, besides cancellation, obliteration, &c. First: another subsequent will or codicil duly executed and proved; and second, some other writing declaring the revocation. It is implied that this other writing is not a will, that is, an act of disposition or declaration of what a man intends as to his property after his death. There may be a separate written revocation, not intended to take effect as a will or codicil, which need not therefore be propounded to the register for probate. This is a very reasonable provision. A man may be absent from home at a distance from the place where his will is deposited, or it may be lost or mislaid, so that he cannot have access to it to cancel or destroy it. He may wish, however, simply to abrogate it without making another will, and so die intestate. In such case he may execute a paper declaring his intention, which provided it is signed by him and proved by two witnesses will be effectual. No probate of it in the register's office is necessary. No letters testamentary or of administration *cum testamento annexo* are required to be issued upon it. *But the case is different when the revocation is contained in what purports to be a will disposing of property. The words of the act point to this: 'other writing,' that is, writing other than a will. A subsequent will without a revoking clause as effectually repeals a prior will as with one. No doubt, as stated by the learned judge below, a will may be void in part and otherwise valid, or it may be wholly invalid. One bequest or devise may be good, whilst other parts may be avoided. But then it stands as a will for those parts which are good.* (Italics ours.) . . . If good as a will at all by the Act of 1833, it revoked the former will. This is the technical difficulty. The substantial one is still more serious. It cannot be known with any degree of assurance, sufficient to justify a legal judgment, that where there is a clause of revocation in a will making a certain disposition of property, that the testator really intended to revoke a prior will making a different disposition, except for the purpose of substituting in place thereof that contained in the second will. It would be making the testator die without any will at all, when it was clearly his intention, as drawn from his executing a paper purporting to be a will, not to do so. . . . We know, however,

that express clauses of revocation are inserted in most wills as a mere matter of form, the mere expression of which is inherently implied, as are many other parts, such as the direction that all just debts and funeral expenses shall be first paid and discharged. As evincing an intention on the part of John Yerkes to die intestate unless the will of 1869 went into effect, that paper—executed as it has been found under undue influence—the very act of execution not the free exercise of his own volition—was no ground upon which any legal judgment could be rested. The parol evidence of what took place at the time of the execution of the paper of 1869, did not help the case of the defendants. It had no tendency to show that unless that paper stood he wished only his lawful issue to have his property, according to the intestate laws, leaving his unfortunate illegitimate child wholly unprovided for. All that he said was that he wanted to make another will. If the execution of that paper was induced by the undue influence of Catherine Rudy, there is some difficulty in comprehending why this declaration made in her presence, and with the same view, is not within the same objection. There was no evidence to submit to the jury, either in the paper itself or any declaration made by him at the time that John Yerkes had any other object in revoking the will of 1865, than to substitute the disposition made by the will of 1869 for it. He had no intention to die intestate, but the contrary. The case of *Barksdale* v. *Hopkins*, 23 Georgia, 332, relied on by the counsel for the defendants, is not to the point, and does not sustain his contention. It holds merely that if a will is before a probate court for probate, and a second will is pleaded as a revocation of the first, the probate court may take notice of the second, although it may be that the second is one which has not been admitted to probate, and one which is not offering itself for probate; consequently the probate court may hear proof touching the execution of the second. That is a proposition, it seems, too clear to be doubted, but it has no application to the present case.''

In *Stickney* v. *Hammond*, 138 Mass. 116, a testator had left two instruments of different dates, each purporting to be his last will and each containing a clause expressly revoking all wills theretofore made. The two instruments were alike, except that the later one contained a clause exempting the ex-

ecutor from giving sureties on his probate bond. The first will was dated June 14, 1877, and the second September 8, 1877. The first will was offered for probate and the second will was offered in evidence for the purpose of showing its revocation. The September will had been finally refused probate because of the neglect of the parties interested therein to defend an appeal taken from the order probating the will. It was conceded that the September will could not be proved as a will because of such neglect and consequent denial of probate. The main distinction between the Massachusetts case and the case at bar is that in the Massachusetts case the parties interested in the second will failed to prove its contents and in the case at bar the statute expressly prohibits the effective establishment of the contents of the second will. In dealing with this question the court made the following statement: "It has heretofore been held that an instrument purporting to be a will, with a clause of revocation of former wills, *cannot be offered in evidence as a revocation only, without a probate thereof.* (Italics ours.) (*Reid* v. *Borland,* 14 Mass. 208; *Laughton* v. *Atkins,* 18 Mass. (1 Pick.) 535; *Wallis* v. *Wallis,* 114 Mass. 510.) And for this substantial reason, that it must be inferred that the testator intended to revoke former wills for the purpose of giving effect to the new disposition of his property, which he has substituted for that in his former wills, and if, for want of proper execution of the subsequent will, its defective construction, or other sufficient cause, proper effect cannot be given to it, we are not to suppose that he designed to die intestate.

"We can find nothing to distinguish the case at bar from those heretofore decided, and the ground upon which they rest appears to us satisfactory. Indeed, the facts as they here appear illustrate the soundness of the rule. The testator had purported only to add a codicil to his will made in June, 1877, and then in existence, exempting the executrix therein named from giving sureties on her bond. The scrivener to whom he applied for this purpose preferred to write out a new will, making the change suggested, and no other. He accordingly did so, and it was executed by the testator on September 17, 1877. The testator manifestly had no intention to revoke the will of June, 1877, *except as he at the same time substituted therefor the instrument of later date, which*

*differed from it only in a purely secondary matter."* (Italics ours.)

The distinction between an instrument of revocation and an express revocation in a will pointed out in the case last cited is thus stated in Redfield on the Law of Wills, page 328: "It is not important that a revoking will should make any disposition of the property bequeathed in the former will. It has been held in some of the American courts, that a subsequent will containing a clause of revocation, executed with due solemnity for the purpose of revoking an existing will, operates, *proprio vigore,* and instantaneously, as a revocation, and consequently, that the destruction of the second will did not revive the former one. This doctrine has an air of plausibility, from the fact, that an instrument of revocation alone would unquestionably have this effect, so long as it was allowed to remain operative. But that would show a present purpose of becoming intestate carried into effect as far as practicable before death. But the making of a will, with a revocatory clause, is very different. It is but substituting one will for another. And the revocatory clause is made dependent, in some sense, upon the subsequent will going into operation. And there is, ordinarily, no purpose of having the revocatory clause operate, except upon that condition. The whole instrument is, therefore, ambulatory, and when destroyed, it all ceases to have any operation. And the same is true of the destruction of a will merely revocatory of former wills. By such destruction, the former wills, if in existence, become revived." It is true that the author is contending for the rule enforced in the common-law courts of England, rather than that enforced in its ecclesiastical courts, a matter still undecided in many common-law states at the time Redfield wrote his treatise, but the contention of the author is worthy of consideration in determining the proper construction of our statute, requiring two witnesses to prove a lost will, notwithstanding section 1297 of the Civil Code more nearly conforms to the rule of the ecclesiastical courts, a matter that will be discussed later.

To recur to the question under discussion. The question is as to the measure of proof of a lost document: What did the legislature mean when it enacted that a lost or destroyed will could not be proved except where two witnesses testified to its contents? The question is, Did the legislature by that

enactment intend that a part of the will could be enforced without being proved and, therefore, without having two witnesses to establish its contents? It seems clear that the legislature had no intention of authorizing a *part* of a will to be established by one witness when it declared that two were essential to "prove" the will, where the *whole* will is provable by one witness as definitely as the part is proved. When the second will is considered in this case it is considered for the purpose of defeating the probate of another will, and thus to establish a right, namely, the right of an heir to succeed to the property, and for this purpose probate is usually required. The proper course under our practice was to try the matter of the validity of the two wills at the same time. We do not consider that the evidence as to the revoking clause was inadmissible on such hearing, the reasons given in *Rudy* v. *Ulrich,* 69 Pa. 177, [8 Am. Rep. 238], would seem conclusive as to its admissibility upon such a cross-contest, but the effect of the evidence when admitted upon the will must be determined in view of its admissibility to probate, as a will. That it has no validity separate and apart from the will of which it is a part seems clear from the foregoing decisions, consequently we think the trend of our decisions, as well as of those above cited, is that the effect of the will is entirely dependent upon its provability in probate and that the usual and proper course is to first probate a will before it can be considered as effective, and if not so first probated that the same measure of proof should be required as upon probate.

If the revoking clause of a will stands upon the same basis as the balance of the will, there could scarcely be room for doubt as to the foregoing proposition, but it is insisted that section 1297 of the Civil Code, declaring the result of the revocation of a revoking will, in effect provides that the revoking clause operates instantly upon execution of the will containing it, and that for that reason its existence can be proved by any competent evidence, thereby establishing the fact that the prior will was revoked as of the date of the revoking will. This view finds support in the department opinion in *Re Lones,* 108 Cal. 688, 690, [41 Pac. 771, 772], where it is said: "The mere execution of a subsequent revocatory will ends the first will, and such will is not revived by the revocation of the last will unless it is revived by the terms of

o

such revocation. What sort of a revocation it must be which can by its terms revive a prior will is shown by the first subdivision of section 1292 of the Civil Code.'' As the view expressed in *Re Lones, supra,* is entertained by three of my associates, it is evident that the matter is worthy of serious consideration, and to that point we will now direct our attention.

The point decided in *Re Lones* was that the prior will was not revived under the circumstances of that case where the parties relied upon circumstances to show an intent to revive the previous will. The point is decided in these words: ''By no act or manifestation of intent, in writing or otherwise, not executed with the formalities with which a will should be executed, would the will of 1856 have been revived upon the cancellation of the will of 1885.'' The reference to subdivision 1 of section 1292 in the quotation above also shows the same conclusion. That subdivision is as follows: Section 1292. ''Except in the cases in this chapter mentioned, no written will, nor any part thereof, can be revoked or altered otherwise than: 1. By a written will, or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator; . . . '' The statement of the court that the will operates instantly to revoke the prior will is *obiter dicta,* although true in legal effect in every case except in the case of a lost or destroyed will. In other words, if the will remains effective and is probated, the former will is revoked thereby. On the other hand, if the will is revoked, the revoking clause is still effective. Hence it is not altogether inaccurate to say that the revoking clause operates *eo instanti* under section 1297 of the Civil Code.

A consideration of section 1297 of the Civil Code requires some attention to the history of that legislation, and this involves the development of the English law. In the ecclesiastical courts it was held that the destruction of the revoking will *animo revocandi* did not re-establish the first will unless such was the intention of the testator, while the courts of common law held that the revocation of the latter will of itself revived the prior will (see discussion in Schouler on Wills, 5th ed., sec. 413; also full discussion in *Pickens* v. *Davis,* 134 Mass. 252, [45 Am. Rep. 322] ; *Randall* v. *Beatty,* 31 N. J. Eq. 643; *Blackett* v. *Ziegler,* 153 Iowa, 344, [Ann. Cas.

1913E, 115, 37 L. R. A. (N. S.) 291, 133 N. W. 901]). Jar-
man in his work on Wills (English edition) states that up
to the time of the enactment of the statute of wills the effect
of the revocation of the revoking will was to re-establish the
will revoked (1 Jarman on Wills, 192). In England this
rule was changed by section 22 of the statute of wills, en-
acted in 1837 (1 Jarman on Wills, 192; Schouler on Wills,
5th ed., sec. 413; *Pickens* v. *Davis, supra*). That section is
as follows:

"Sec. 22. And be it further enacted, that no will or codicil,
or any part thereof, which shall be in any manner revoked,
shall be revived otherwise than by the re-execution thereof,
or by a codicil executed in manner hereinbefore required,
and showing an intention to revive the same; and when any
will or codicil which shall be partly revoked, and afterwards
wholly revoked, shall be revived, such revival shall not ex-
tend to so much thereof as shall have been revoked
before the revocation of the whole thereof, unless an inten-
tion to the contrary shall be shown" (Stats. 7, Will. IV, and
1 Vict., c. 26, sec. 22, quoted in full in Schouler on Wills,
*supra*). Similar laws have been enacted in New York,
Ohio, Indiana, Missouri, Kentucky, California, Arkansas,
Virginia (*Pickens* v. *Davis, supra;* Am. Stat. Law, Stimson,
secs. 2673, 2679, p. 360).

The legislature of this state in 1850 enacted that the com-
mon law of England should control in all matters where not
repugnant to our statute law and constitutional law (Stats.
1850, p. 219). Therefore, in the absence of any statutory
provision in regard to the effect of the revocation of a re-
voking will, we would be involved in the same confusion that
existed in the English courts, prior to the statute of wills,
and the additional difficulty arising from the fact that no such
distinctions as that between the ecclesiastical and common-
law courts of England existed in this state. This confused
state of the English law was carried into some of our states,
and was duly settled in Iowa as late as 1911, where that
court adopted the view of the ecclesiastical courts of Eng-
land, and held that the effect of the revocation of a subse-
quent will containing a revoking clause was a question of the
intent of the testator "to be gathered from admissible parol
testimony." The question was also an open one in Massa-
chusetts until 1883, when it was settled in *Pickens* v. *Davis*

by adopting the rule in the English ecclesiastical courts (*Pickens* v. *Davis*, 134 Mass. 252, 253, 256, [45 Am. Rep. 322]. See, also, *Aldrich* v. *Aldrich*, 215 Mass. 164, [Ann. Cas. 1914C, 906, 102 N. E. 487]).

It was, therefore, expedient that the same legislature that adopted the common law of England as a basis of our jurisprudence in enacting our statute of wills should enact a provision similar to the English statute of wills (sec. 22, *supra*). This was done by section 11 of the act of 1850 (Stats. 1850, p. 178), since codified as section 1297 of the Civil Code. It is thus apparent that the reason for enacting section 1297 of the Civil Code was to settle a question which was in doubt at the common law and which had been settled in England by the statute of wills in 1837. The purpose of this legislation was to determine the effect of a revocation of a revoking will. The statute does not in terms provide that the revoking clause of a will is different from the balance of a will in that it operates *eo instanti*. Of course, it could be held as a matter of construction that the effect of this legislation was to make the revoking clause operative at once. This, however, is entirely a matter of construction of the statute, and is of no importance where no question as to the method of proving the revoking clause is involved, as already pointed out.

It should be observed, however, that the question of the *method of establishing the fact that the second will contained a revoking clause* is not involved in this legislation or in the decisions rendered under the common law, for the reason that both under the statute of wills and under the common law the contents of a lost or destroyed will could be proved in the same manner that any fact could be proved, and, therefore, no question could arise as to whether or not a revoking clause could be proved and given effect as such when the balance of the will could not be proved because of a statutory rule declaring that two witnesses are essential to the probate of a lost or destroyed will. However, the tendency of the English courts was to hold that the whole will must be proved, otherwise the part proven could not be given effect. That rule has been followed by some of the American courts, but the general rule is to the contrary, at least so it was stated in Thornton on Lost Wills, sections 110, 111 (*Estate of Patterson*, 155 Cal. 626, [132

Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654, 102 Pac. 941]).

The question we have to consider in the case at bar is the effect of a statute passed after the statute of wills and first enacted in 1851, providing that a lost will could not be established except by the testimony of two credible witnesses (Stats. 1851, p. 452, sec. 38), and the codification of that statute enacted in 1872 (Code Civ. Proc., sec. 1339).

Is it unreasonable in this condition of the law to say that when the legislature declared the will could not be proved except upon the testimony of two witnesses the rule applied to every part of the will, when it is sought to make the same operative?

Granting for the moment that the revoking clause operates instantaneously to revoke the previous will, the question still remains, How are we going to establish that the will contained such a clause, by one or by two witnesses? So far as we have discovered there is no case arising under a statute similar to ours, holding that where the question of revocation is in dispute, that the revoking clause of an unrevoked, lost, or destroyed will can be proved by less than two witnesses.

The statute in relation to the proof of a lost or destroyed will (Code Civ. Proc., sec. 1339) should be construed with reference to its purpose and object. The purpose of requiring the proof of such a will by two witnesses is to prevent the fraudulent proof of a purported but really nonexistent will by the testimony of only one witness, on the theory that there is less likelihood of two witnesses committing perjury than one. But this policy applies with almost equal force to the revoking clause, which, if established, will as effectively defeat the intention of the testator as would a fraudulent will. To say that you can establish one part of a will for any purpose by evidence which is incompetent to establish the balance of the will works a manifest departure from the intention of the deceased in every instance where the question arises. This is shown by the case at bar. If we examine the whole of the subsequent will, it is manifest that the testatrix never intended to revoke the first will. What she really intended to do was to make a few slight changes therein, and yet, if we act under the rule contended for by the appellant, we must necessarily hold that the property of

the decedent goes to her husband, in violation of her will twice expressed with all the formality provided by law.

### Question at Issue Here not Involved in English Cases.

As already stated, at common law or under the English statute of wills the question involved here as to the amount of proof required to establish the revoking clause of a lost and unrevoked will could not arise. The text-books on English probate law make this plain. In Theobold on Wills (pp. 51, 52) it is stated that the contents of a lost will may be established by secondary evidence including the declarations of the deceased. The contents of such will may be established by a *single witness* and "Where it is impossible to ascertain the whole contents of the will, effect will be given to such portions as can be ascertained, if the court is satisfied that they substantially represent the intention of the testator." That author also states the rule with reference to a lost will as follows: "A subsequent will is no revocation of a former one if the contents of the later will are unknown, or if, though it is known that the later will differed from the former one, it is unknown in what respect it differed." (Citing cases; Theobold on Wills, p. 45.) In Powles & Oakley on Probate, another English text-book (p. 120), it is said: "The contents of a lost will may be proved by a single witness, even though interested, whose veracity and competency are unimpeached. When the contents of a lost will are not completely proved, probate will be granted to the extent to which they are proved." From the foregoing it is clear that the decisions of the English courts prior to the statute of wills are not authority upon the point involved here and that the decisions subsequent to that statute cannot involve the question as to the proper measure of proof.

### Effect of Section 1297 of the Civil Code.

[8] We conclude that it was foreign to the scope and purpose of section 1297 of the Civil Code, *supra*, to determine the effect of an unrevoked revoking clause of a will, and that whatever inferences are to be drawn therefrom with reference to the nonambulatory character of the revoking clause cannot overcome the more direct declarations of section 1339 of the Code of Civil Procedure, *supra*, as to the *quantum* of proof for a lost or destroyed will.

### Further as to Measure of Proof.

A late case in Massachusetts (*Giles* v. *Giles,* 204 Mass. 383, [90 N. E. 595] [1919]), is worthy of consideration in connection with the subject of the effect of a revoking clause in a lost will. That court, it will be remembered, adopted the view of the English ecclesiastical courts as to the effect of a revoking clause, a rule similar to our section 1297 of the Civil Code (*Pickens* v. *Davis,* 134 Mass. 252, [45 Am. Rep. 322]). In *Giles* v. *Giles, supra,* the court considered the purpose of section 8, *supra,* Revised Laws, chapter 135, providing for the method of revoking wills, which is similar to our section 1292 of the Civil Code. The question involved in the case is thus stated therein: "The third issue was as follows: 'Was said instrument revoked by the said Charles E. Giles subsequently to the date, execution and publication thereof by the making, execution and publication of another will which has been lost or destroyed, and its contents cannot be proved so that it can be propounded for probate?' . . . The purpose of the statute (sec. 8, *supra*) is to prevent the revocation of a will by a writing, *without as strong proof of the execution and revocatory character of the writing as is required to establish a will."* (Italics ours.) The former decisions of the supreme court of that state on the subject are therein reviewed as follows:

"It is the law of this Commonwealth that, 'when an instrument of revocation is in existence and capable of being propounded for probate, *its validity should be tried by a direct proceeding instituted for the purpose in the Probate Court. Laughton* v. *Atkins,* 1 Pick. (18 Mass.) 535'; *Wallis* v. *Wallis,* 114 Mass. 510. If such an instrument has been 'lost or destroyed, it cannot be admitted to probate without clear and satisfactory proof of its whole contents.' *Davis* v. *Sigourney,* 8 Met. (Mass.) 487. It was decided in *Wallis* v. *Wallis, ubi supra,* that 'if it can be proved that a later will was duly executed, attested and subscribed, and that it contained a clause expressly revoking all former wills, but evidence of the rest of its contents cannot be obtained, it is nevertheless a good revocation.' But Chief Justice Gray added: 'and it can be made available only by allowing it to be set up in opposition to the probate of the earlier will, in accordance with the practice established in the English Ecclesiastical Courts before the Declaration of Independence, and adopted

by the courts exercising similar jurisdiction in New York and New Jersey.' (*Helyar* v. *Helyar*, 1 Lee, 472, [161 Eng. Reprint, 174]; *Nelson* v. *McGiffert*, 3 Barb. Ch. (N. Y.) 158, 164, [49 Am. Dec. 170]; *Day* v. *Day*, 2 Green Ch. (3 N. J. Eq.) 549.) *This means that proof of its execution is to be made in the same way as if it were to be admitted to probate as a will.* Indeed, under our statute it takes effect in the same way and under the same requirements as to execution as a will that directly disposes of property. . . .

"We are of opinion that, under the R. C. L. 135, sec. 8, to show a revocation of a will by a writing, the proof that there is a 'writing, signed, attested and subscribed in the same manner as a will,' *must be of the same kind and quality as would be required to establish the writing as a will,* except that proof of its contents, beyond the fact that they are revocatory, need not be given. We think it plain that, apart from the statute, proof by the declarations of the testator would not be competent." (Italics ours.)

It is true that in the foregoing decision the question of whether or not the *contents* of a revoking document must be established by two witnesses was neither considered nor decided, as it was not involved under the Massachusetts law. The language of the court and the general tenor and effect of the decision would point to the conclusion that under the Massachusetts statute that court would require the proof of the revoking clause of a lost will to be established by two witnesses if such proof was essential under their law to establish such a will for probate as is required in this state.

### Does the Particular Will Revoke the Former Will When Considered as an Entirety?

If we assume that a subsequent will may be considered as a revoking instrument and therefore proved by one witness, it would be unreasonable to consider the revoking clause alone in determining the effect of the second will as an instrument of revocation. Such a construction would be opposed not only to the rule for the construction of wills, but of all other writings, which are to be construed as a whole to determine their legal effect. It is true that the authorities draw a distinction between a will which operated to revoke a former will because inconsistent therewith and a will that contains a revoking clause. This is pointed out in *Blackett*

v. *Ziegler*, 153 Iowa, 344, [Ann. Cas. 1913E, 115, 37 L. R. A. (N. S.) 291, 133 N. W. 901]. That case holds that the latter operates *eo instanti* and that the former only operates in case the will is in effect at the time of death. The court quotes with approval the following from Page on Wills, section 273:

"In the United States, in the absence of a statute on this subject, the decisions are by no means uniform. The better line of authority made a distinction between the cases where the later will contained an express revocation clause, and where it was merely inconsistent with the earlier will. There seems to have been material distinction, and on good ground, between the state of a former will after a second one merely inconsistent with it, and its state after a second one with a declaration expressly revoking it. In the first case, the only chance for the second to operate in revocation of the first, according to the prevalent theories of the courts, was by its coming to a head as an active will, which it could do only by surviving its author. Being the last expression of the decedent, and at the same time practically inconsistent with the prior one, the intent to repeal the first by it was to be implied. In case, however, of its being recalled by the testator in his lifetime, it could not, on the theory referred to, be taken to have had the effect to do away with its predecessor. Being cut off before having its disposition of property awakened into life, it could have no affirmative operation through its dispositions upon the estate. Where such distinction is recognized, the destruction of a later will inconsistent with an earlier will, but containing no clause of express revocation, revives the first will. Where the second will contains a clause of revocation, it is held in many jurisdictions in the United States, in accordance with the distinctions already given, that the destruction of the second will does not revive the first will."

In California, however, this distinction between a revocation by implication and an express revocation cannot well be drawn, for section 1296 of our Civil Code expressly provides that the will is *revoked* by a subsequent will containing provisions inconsistent with the previous will as well as by a will containing an express clause of revocation, and section 1297 declares the effect of the destruction of the *revoking will*. If the execution of an inconsistent will operates as a

revocation as well as and with equal force as a will containing an express revoking clause, as seems to be declared by section 1296, it would seem to follow if we are to adopt the view that a lost revoking will may be proved as such by one witness, that the whole of an inconsistent lost will, containing no revoking clause, could be proven by one witness to establish a revocation of an earlier will. If this be true, with equal propriety the whole will can be proven in connection with and in explanation of an express revoking clause, and thus the court having the whole will before it would be able to say in the case at bar that the second will, taken as a whole, was really a codicil to the first, confirming its bequest, and devise to the sister. We do not hold that this can be done, but we are inclined to agree with Mr. Justice Sloane that the revoking clause in the second will should be considered as a conditional revocation—that is, that the revocation is conditional upon the whole will being effective and for that reason cannot be given effect unless the balance of the will is also given effect.

The order admitting the will of November 25, 1916, to probate is reversed, and the trial court is directed to admit the will of May 13, 1908, to probate upon the uncontradicted testimony of its due execution already in evidence, each party to pay its own costs on appeal.

Angellotti, C. J., and Lennon, J., concurred.

SLOANE, J., Concurring.—I concur in the conclusion reached by Justice Wilbur that there is insufficient proof of the revocation of the first will.

I am not satisfied, however, that an instrument purporting to be a subsequent will and containing apt language showing a present revocation of former wills may not be offered in evidence as independent proof of such revocation, and when lost or destroyed, its terms of revocation be proved by a single competent witness.

But I think that such an instrument, executed for the concurrent purposes of creating a new will and revoking an old one, is subject to a different construction as to its revoking clause than obtains in the interpretation of an instrument executed solely to revoke a former will.

It is held by many authorities, a number of which are cited in Justice Wilbur's opinion, that where a testator couples

the revocation of former wills with the publication of a new one, he declares his intention not to die intestate, and there is a strong implication that he only intends the act of revocation to take effect if the new will becomes operative; and it has, therefore, been frequently held that it is only after the subsequent will has been admitted to probate that it can be used as evidence of revocation of former wills. (*Stickney* v. *Hammond*, 138 Mass. 116; *Peck's Appeal*, 50 Conn. 562, [47 Am. Rep. 685]; *Reid* v. *Borland*, 14 Mass. 208; *Laughton* v. *Atkins*, 1 Pick. (Mass.) 535; *Wallis* v. *Wallis*, 114 Mass. 510.)

But, conceding that the contents of such revoking will, though lost or destroyed and not susceptible of proof as a will by a single witness, can be established as to a revocation of former wills by one competent witness, the whole contents and purpose of the instrument must be considered in determining whether it effects such revocation.

In the present instance, Mrs. Thompson's second will was practically identical with the first in its disposition of her estate, and amounted to little more than a republication of the earlier will. It did contain express words of revocation of former wills, but it would be a very unjust and unreasonable construction of these words of revocation to hold that they were intended, in the event that this second will should fail of admission to probate, to defeat her twice declared intention that substantially all her property should go to her sister.

In *Wilbourn* v. *Shell*, 59 Miss. 205, [42 Am. Rep. 363], the testator, in order to correct the spelling in his olographic will already executed, had it copied and attempted to execute the copy as a will, and destroyed the original. The court says: "From a consideration of all the facts in evidence, we are satisfied the testator destroyed his holographic will, under the belief that the copy thereof executed by him was a valid will, and not with the intention of dying intestate as to his lands. . . . Being inefficient because of the want of attestation, a revocation of the prior will, made by the testator under a belief in its validity, is conditional and not absolute, and the condition having failed, the original is in law still the existing will of the testator, and is entitled to probate.''

Redfield on Evidence states the doctrine to similar effect: "It is only where a testator revokes a former will, upon the supposition that he has executed a subsequent valid will, which proves invalid, that the act of revocation is held incomplete." (1 Redfield on Wills, *308.) "Where the testator destroyed his will, believing it had already been revoked by a later will, which proved to be invalid and there was no other evidence of his intent except his declaration made at the time, that it was no use to keep it, as he had another, it was held the will was not revoked." (Redfield on Wills, *330.). In *Stickney* v. *Hammond*, 138 Mass. 116, the court says: "The testator manifestly had no intention to revoke the will of June, 1877, except as he at the same time substituted therefor the instrument of later date, which differed from it only in a purely secondary matter."

So, here, Mrs. Thompson undoubtedly had no purpose or intent to destroy the testamentary effect of her former will except on the condition that the later will would become effective. Therefore, whether the evidence as to the contents of this second will is excluded or admitted, there is insufficient proof that the first will was revoked.

If this conclusion is sound, as the majority of the justices concede, I see no need for this court to go further in its ruling on this appeal. The learned and persuasive arguments of the conflicting opinions filed herein but emphasize the intricacies of the subject and lead me to adopt the prudent course suggested in the quaint text of Swinburne, in his work on Wills, who, three centuries ago, found himself in deep water in trying to reconcile the accumulated learning of that day on this subject. On page 977 of the seventh edition of his work he is quoted as saying:

"Surely this question, especially concerning the manner of mention or revocation to be made in the Second Testament, is very difficult, and such, as in the Answeing whereof, the Writers do fight among themselves mightily, and do contradict one another very strongly, so that the Victory is very doubtful, and very hard it is to know whether Opinion is truer, or more commonly received. Others, labouring to reconcile these Contradictions, and to pacify these Contentions, have waded so for fine and dainty Distinctions, that they seem to swim up and down, and to float hither and thither, I know not whither, in a deep and bottomless Sea

of intricate and confused Divisions: So that if a Man would adventure to follow them to the End of their Voyage, he might well doubt whether ever he should obtain any Haven or safe Landing. Wherefore, for mine own part I thought to wade no further from the Shore than I should find fast Footing, and where I might be within the Reader's Reach.''

OLNEY, J., Dissenting.—I dissent.

The leading opinion holds that because under our statute two witnesses are required to establish the contents of a lost or destroyed will *for the purpose of probating it* so that it may stand as the testator's last will effectively disposing of his property, two witnesses are likewise required to prove that it contained a clause revoking former wills, when it is sought, not to probate the instrument, but merely to show the revocation of a former will made by it. This position can be justified only upon the theory that a probate of the instrument is necessary in order that the clause of revocation contained in it be operative, since the code section requiring two witnesses to prove the contents of a lost instrument applies only to the *probate* of a will. But that the probate of an instrument of revocation is not necessary appears plainly from our code. Section 1292 of the Civil Code provides in terms that a will may be revoked by any instrument suitably executed, whether it be a will or not, and manifestly probate cannot be required of an instrument that is not a will. The section reads: ''Except in the cases in this chapter mentioned, no written will, nor any part thereof, can be revoked or altered otherwise than: 1. By a written will, or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator; . . . ''

It is in fact conceded that if the instrument of revocation be not a will, the code section requiring two witnesses for proof of the contents of a lost will can have no application, but it is said that this is not true when the lost instrument is a will. But why should there be any difference? It is not sought in either case to prove the instrument as a will, but merely as a revocation, a very different thing, and the effect and operation of the instrument as being a revocation is the same, whether it be a will or not.

There would be ground for making a difference if the effect and operation of a revocation contained in a will were dependent upon the will finally becoming effective and operative as the testator's last valid will. There is but one method of establishing an instrument as a decedent's last valid and operative will and that is the probating of it. If, therefore, the operation of a clause of revocation contained in a will were dependent upon the instrument appearing at the testator's death to be his last will, its probate would be necessary to show the revocation worked by it. But it is not the law of this state, or of the other states that have adopted the rule of the ecclesiastical courts, that the operation of a clause of revocation in a will is dependent upon the instrument continuing until the testator's death as his valid last will, unsuperseded and unrevoked. Section 1297 of the Civil Code provides just the contrary. It reads: "If, after making a will, the testator duly makes and executes a second will, the destruction, cancellation, or revocation of such second will does not revive the first will, unless it appears by the terms of such revocation that it was the intention to revive and give effect to the first will, or unless, after such destruction, cancellation, or revocation, the first will is duly republished."

If the revocation of one will contained in a second is still effective, although the second will is in turn revoked, such revocation is certainly not dependent on the second will appearing to be the last will of the testator. Right here is where fundamentally, as I see it, the leading opinion is wrong. It takes the position, in spite of the code sections just quoted, that a revocatory clause in a will is ambulatory in effect like the disposing clauses of a will and is not effective instantaneously with execution. Thus it is said: "In order that the revoking clause in this lost and unrevoked will should be effective as such, it was necessary to establish that such clause was in her last will, and thus an effective part of her last will"; and again: "If the revoking clause of a will stands upon the same basis as the balance of the will, there could scarcely be room for doubt as to the foregoing proposition, but it is insisted that section 1297, Civil Code, declaring the result of the revocation of a revoking will, in effect provides that the revoking clause operates instantly upon the execution of the will containing

it, and that for that reason its existence can be proved by
any competent evidence, thereby establishing the fact that
the prior will was revoked as of the date of the revoking
will.  This view finds support in the department opinion
in *Re Lones*, 108 Cal. 688, 690, [41 Pac. 771, 772]." Fol-
lowing the latter statement, the opinion then goes on to
question the view expressed in *Re Lones*.

It is novel doctrine, indeed, that a formal revocation of a
will, whether it be contained in a later will or in an instru-
ment not a will, does not operate upon the execution of the
instrument, but is ambulatory in effect in those jurisdictions
which, like ours, have adopted the rule of the ecclesiastical
courts that the revocation of a revoking will does not revive
the first will.  What authority is there for such doctrine,
and what do our code sections, 1292 and 1297, of the Civil
Code, mean other than that a formal revocation operates
instantly with the execution of the instrument by which it is
declared, regardless of whether that instrument be a will
or not?

The leading opinion admits that if the will containing the
revocation clause is in turn revoked, the revocation is yet
effective, the instrument cannot be probated, and, if de-
stroyed, two witnesses as to its contents are not required for
the purpose of proving the revocation.  Is this not an ad-
mission that the revocation was effective from the beginning,
from the time of execution of the instrument, and that the
operation of the revocatory clause is quite different from
that of the clauses disposing of the testator's estate?  Upon
what other theory is it possible that the revocation is ef-
fective although the will as a will has in turn been revoked?
And when a will revoking former wills has been destroyed
and secondary evidence of its contents is necessary, why
should two witnesses be required to prove its contents, if its
destruction were not by way of revocation, and less than
two be sufficient if it were?  What has the intent with
which the instrument was destroyed got to do with the mat-
ter?  If it be sought to prove the instrument for the pur-
poses of probate as a will, then two witnesses as to its con-
tents are required regardless of whether it was destroyed
*animo revocandi* or not.  On the other hand, if it be sought
to prove the instrument for some other purpose than pro-
bate, as, for example, to defeat the probate of a former

will by showing its revocation, why should the secondary proof required of its contents vary according as its destruction was *animo revocandi* or not? The statute makes no such difference. It makes the effect of the instrument the same in either case; it works a revocation. The statute does make a difference in the secondary proof required according to the *purpose* for which it is sought to prove the instrument, and requires more in case it is sought to probate the instrument than where it is sought to prove it for some other purpose. There is here a rational and recognized distinction, and it is this, and this alone, which in my judgment the statute makes. And certainly proving an instrument, whether it be destroyed or not, for the purpose of showing a revocation of wills worked by it, is not proving it for the purpose of probating it.

The leading opinion admittedly cites no authority which directly supports its position, and presumably there is none. It does cite a number which it considers indirectly support its position. It would unduly extend this dissenting opinion —already too long—to discuss them. Suffice it to say that an examination of them all plainly discloses, in my judgment, that each and all go upon some point not present here and making this case radically different from them.

Nor is it the fact, as the leading opinion assumes, that there are no authorities directly in point. In a number of cases the distinction has been made between proving the contents of a lost will for the purpose of probating it, and proving the contents for the purpose of showing the revocation of an earlier will, and in one at least the exact question would seem to have been presented and decided. The rule of the English ecclesiastical courts was that two witnesses, or at least a single witness with corroborating circumstances, were required for the probate of a will. (3 Wigmore on Evidence, secs. 2045, 2048.) Yet, in *Helyar* v. *Helyar*, 1 Lee Ecc. 472, [161 Eng. Reprint, 174]. Sir George Lee, after considering the point, held that for the purpose of showing the revocation of one will by a later one, which had been lost or destroyed, the uncorroborated evidence of a single witness was sufficient for the purpose of establishing the contents of the second will operating as a revocation.

The syllabus in *Day* v. *Day*, 3 N. J. Eq. (2 Green Ch.) 549, correctly states the decision. It reads: "If a prior will

be revoked by a subsequent one, and both be improperly destroyed, the contents of the first instrument cannot be established as the testator's will, although the contents of the second will cannot be ascertained.''

In *Nelson* v. *McGiffert,* 3 Barb. Ch. (N. Y.) 158, [49 Am. Dec. 170], the testator made two wills, one in 1832 and one in 1837. The first was offered for probate before the surrogate. The second had been destroyed, and proof was offered of it in resistance to the probate of the first as having revoked it. Under the New York practice at the time, the chancellor alone, not the surrogate, had the power to receive proof of a destroyed will for the purpose of establishing it as a testamentary disposition of the decedent's property, that is, for the purpose of probate. The point was made that the second will not having been so established, the surrogate, upon the proceedings for the probate of the first will, could not receive proof of the second for the purpose of showing that the first had been revoked. Concerning this point, the court said (3 Barb. Ch. (N. Y.) 164, [49 Am. Dec. 170]) : ''The only remaining questions are as to the due execution of the subsequent will of 1837, and its effect upon the will of 1832. There is no doubt as to the jurisdiction and power of the surrogate to receive proof that the will of 1832 was revoked by a subsequent will of the testator, and that such subsequent will had been fraudulently destroyed; or that it was destroyed by the testator when his mind had become so impaired that he was incompetent to perform a testamentary act. The chancellor alone had the power to take proof of such a will for the purpose of establishing it as a testamentary disposition of the property of the decedent. But in resisting the probate of the instrument propounded by McGiffert as the last will and testament of the decedent, the heirs and next of kin had the right to introduce any testimony which would be sufficient to satisfy the surrogate that the instrument propounded was not in force as a valid will at the death of the testator named therein.''

The rule in Mississippi, as in some other states, is, or at least was, that a lost or destroyed will cannot be probated unless all its contents are duly proven. It was held, nevertheless, in *Vining* v. *Hall,* 40 Miss. 83, that although a destroyed will could not be established as a will because its

contents could not be fully proven, yet the cause of revocation which it contained could be shown, and was effective as a revocation of a former will which it was sought to establish.

In Massachusetts itself, from whose supreme court the leading opinion quotes liberally, the distinction between proving a lost or destroyed will for the purpose of probate and proving it for the purpose of showing a revocation is made. The syllabus in *Wallis* v. *Wallis*, 114 Mass. 510, correctly states the ruling, and reads: "When a will revoking a former will is in existence, it must be established in the probate court; but when it has been lost or destroyed, and its contents cannot be sufficiently proved to admit it to probate, it may nevertheless be availed of as a revocation in opposition to the probate of the will revoked by it."

Finally, there is the decision to which I have referred as exactly in point here. It is *In re Wear's Will*, 131 App. Div. 875, [116 N. Y. Supp. 304]. There the probate of a will was resisted on the ground that it had been revoked by a second will which could not be found. That it is exactly in point here is apparent from the following quotation from it:

"The objection urged on this appeal from the decree of the surrogate refusing probate to the first will is that the proof offered and received of the execution of the second will is inadequate. The appellant contends that the proof must be of the character required by sections 2621 and 1865 of the Code of Civil Procedure, entitling a lost will to probate. The requirement of this section is that the provisions of such lost will must be established 'by at least two credible witnesses, a correct copy or draft being equivalent to one witness.' We are of the opinion that this contention cannot be sustained. *It is one thing to admit to probate a will disposing of a man's estate where the will cannot be found, and quite another thing to merely establish that a second will, revoking a former will, has been duly made and executed and left in the possession of the decedent. In the one case we are assuming to dispose of property in a manner different from that prescribed by law in the absence of a will, while in the latter case we are merely permitting the property to descend in the manner which the law des-*

*ignates*. In the case now under consideration the execution and delivery of the will to the decedent was proved by Mr. Eckstein who drew both wills, and who was a subscribing witness in both of them. He would have been entirely competent to have proved the execution of the will, if it had been found, the remaining subscribing witness being dead; *and he was equally competent to prove the execution and delivery of the will to the decedent, not for the purpose of establishing a lost will, but to show that the will offered for probate was not the last will and testament of the decedent,* and that such an instrument was executed and left in such a custody that the presumption is that it was destroyed with the intention of revocation, with the result that the decedent died intestate. We are of opinion that the authorities relied upon by the learned surrogate support his conclusion, and that the decree refusing probate to the will of June, 1900, was properly made.''

But one point more. The leading opinion in more than one place states in effect that the question is whether a less proof or a different measure of proof is required to prove a part of a will—to wit, a clause of revocation of former wills—than is required for proof of the whole instrument. In my judgment no such question is presented. The question which is presented is, Does the statutory rule as to the proof required *for the purpose of probating the instrument,* i. e., establishing it as the testator's valid and effective last will and testament, apply when it is not sought to prove the instrument for that purpose at all? The point that I would make is that where the instrument is offered for the purpose of probate, the rule of the Code of Civil Procedure as to the proof required for that purpose applies, but where it is not sought to prove it for that purpose, then the code section—applying in terms only to probate—has no application and the general rules of evidence apply, and this, regardless of whether it is sought to prove the whole or only a part of the instrument.

It is easy in fact to suggest a case wherein it is sought to prove the whole of a will and where as well the will purports to dispose of property, and where yet the measure of proof required for probate would surely not apply. The declarations of a deceased member of a family as to relationship are always admissible in pedigree cases. Suppose in

such a case it was desired to prove that John Smith was the son of James Smith, and for that purpose it was sought to prove a declaration to that effect by a brother of James Smith, the declaration consisting in a will reading, "I hereby give my estate to John Smith, the son of my brother James Smith." The declaration is certainly competent and admissible, whether the instrument has been probated or not, whether it is entitled to probate or not, or whether the declaration is all of the will or is only a part. And yet surely the proof of such a declaration is not governed by the rules applicable to proving the instrument for the purpose of probate, although the thing proven is identically the same in each case, the execution by a certain person of a certain document. The reason why a different measure of proof applies in one case than in the other is that the *purposes* for which it is sought to prove the instrument are different. If it is sought to prove an instrument for the purpose of probating it as the duly executed and unrevoked last will of the testator, we have a special statutory rule applicable. If it is sought to prove it for any other purpose, there is no special rule applicable, and the general rules of evidence apply. This would seem perfectly plain and simple, and yet the leading opinion would seem to fail completely to appreciate and meet it.

Reference is made to the rule that in this state and in other states which provide by statute for similar probate proceedings, a will may not be introduced in evidence as a muniment of title, or, for that matter, be used in any way as a muniment of title, unless it has been probated. But this rule has no bearing on the present discussion. It is, in fact, not a rule of evidence at all. It is but a corollary of the propositions (a) that an instrument which purports to be a will does yet not operate to transfer title unless it is the valid last will of a decedent, and (b) that in this state there has been provided by statute a proceeding *in rem*, i. e., probate, by which alone the fact that an instrument is the valid last will of a decedent may be established. The result is that on the one hand, unless the instrument has been admitted to probate, no amount of proof will suffice to give it operation as a muniment of title, and, on the other hand, if it has been admitted to probate, no other proof is required than proof of the order admitting it, and if such

proof is furnished, it is final and conclusive. The rule, then, that a will cannot be used as a muniment of title until it has been probated is not a rule of evidence but one simply that a certain adjudication *in rem* is required to establish its character as the valid last will of a decedent. The point in connection with the present discussion is that by sections 1292 and 1297 of the Civil Code a will does not have to be the valid last will of a decedent in order to operate as a revocation of former wills.

Shaw, J., and Lawlor, J., concurred.

Rehearing denied.

Angellotti, C. J., Wilbur, J., Lennon, J., and Sloane, J., concurred.

Shaw, J., Lawlor, J., and Olney, J., dissented from order denying rehearing.